634 So.2d 158 (1994)
Douglas J. LOVE, Petitioner,
v.
Luz Maria GARCIA, Respondent.
No. 81478.
Supreme Court of Florida.
February 10, 1994.
Rehearing Denied April 4, 1994.
John R. Hargrove, Paula Revene and Heinrich Gordon Batchelder of Hargrove and Weihe, and John E. Donahoe of Donahoe & Pecaro, P.A., Fort Lauderdale, for petitioner.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach and Sheldon J. Schlesinger, P.A., Fort Lauderdale, for respondent.
PER CURIAM.
We have for review, on express and direct conflict, Love v. Garcia, 611 So.2d 1270 (Fla. *159 4th DCA 1992). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
On the night of April 3, 1986, Garcia, while attempting to cross an intersection, was struck and injured by an automobile driven by Love.
Approximately five minutes before the accident, City of Sunrise police officer William Collins observed a distressed Garcia standing alone on Sunset Strip. Garcia pulled the officer over and requested to be taken to a local gas station. Upon arrival at the station, she said it was the wrong one and asked to be taken to another station. Collins left when he was unable to offer additional transportation, and soon thereafter the accident occurred.
Love testified that the darkness of the intersection prevented him from seeing Garcia sooner and when he did see her he immediately applied his brakes; but he was unable to avoid hitting her. Christopher Caviness, an independent eyewitness, saw the accident and also witnessed Garcia's movements before she was struck. Caviness' deposition testimony stated that Garcia appeared to be under the influence of alcohol. The trial judge did not allow the jury to hear Caviness' opinion testimony, but he was allowed to testify that Garcia appeared to stumble as she walked across the street, looked upset, and was dressed in dark clothing.
At trial, Love attempted to introduce the results of Garcia's two blood alcohol tests[1] as business records. The introduction was based on a predicate which consisted of testimony by the record custodians of SmithKline and the hospital. Garcia challenged the accuracy, reliability and trustworthiness of the tests, and filed a motion in limine to exclude the results. The motion was based on: 1) Love's failure to list witnesses who could lay a proper predicate, i.e., independent testimony explaining how the tests were performed; 2) an absence of information detailing what type of test was performed; 3) a lack of information regarding who drew the samples; and 4) a dearth of evidence indicating the samples as Garcia's. The trial court agreed with Garcia, rejected Love's introduction, and granted the motion in limine.
The jury awarded Garcia $2 million, which was reduced to $1 million based on a 50% comparative negligence factor. The Fourth District Court of Appeal panel reversed the trial court and held the blood tests admissible; but the court, sitting en banc, withdrew the panel decision and affirmed the trial court's exclusion of the blood tests. Love petitioned this Court for review. We quash the en banc decision and remand for proceedings consistent with this opinion.
Confusion surrounds the issue of medical and hospital records, and their admissibility under the business record hearsay exception.[2] Several district courts have held that medical records are an exception to the hearsay rule and fall within section 90.803(6)(a), Florida Statutes (1991).[3]See Phillips v. Ficarra, 618 So.2d 312 (Fla. 4th DCA 1993); Grant v. Brown, 429 So.2d 1229 (Fla. 5th DCA), review denied, 438 So.2d 832 (Fla. 1983); Jaime v. Vilberg, 363 So.2d 386 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 462 *160 (Fla. 1979). This Court has not previously had the opportunity to rule on this issue, and we do so now for the first time.
As with other forms of business records, medical records can be entered if
made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness.
§ 90.803(6)(a), Fla. Stat. (1991). Once this predicate is laid, the burden is on the party opposing the introduction to prove the untrustworthiness of the records. If the opposing party is unable to carry this burden, then the record will be allowed into evidence as a business record. However, even if a proper predicate has been laid or the opposing party cannot prove the untrustworthiness of the evidence, the records must still withstand the test of relevancy. Accordingly, a trial judge may exclude the records if they are unfairly prejudicial or confusing. § 90.403, Fla. Stat. (1991).
Under the business record exception, the trustworthiness of medical records is presumed. Phillips v. Ficarra, 618 So.2d 312, 313 (Fla. 4th DCA 1993). Such trustworthiness is based on the test's general acceptance in the medical field and the fact that the test in question is relied upon in the scientific discipline involved. Andres v. Gilberti, 592 So.2d 1250, 1252 (Fla. 4th DCA 1992). Actual reliance on the test in each course of treatment is not required. Accordingly, the district court's statement that "[i]n a medical records case, the trustworthiness element  the only basis for business records admissibility  relates to whether the health care providers relied on the test result in the course of treatment," 611 So.2d at 1275 (emphasis added), is a flawed interpretation of the business record hearsay exception.
Our review of the record indicates that given an opportunity, it is possible that Love could have laid a proper predicate through the testimonies of the SmithKline and hospital records' custodians. To deny him this opportunity was reversible error. Accordingly, we quash the decision below, and remand for proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Test one, showing a blood alcohol of .23, was taken immediately upon arrival at the hospital and was analyzed by SmithKline. Test two, taken several hours later and analyzed by the hospital, showed a blood alcohol level of .14.
[2] The medical record exception includes routine blood tests which disclose alcohol content if the tests are a component of the hospital or medical records. Andres v. Gilberti, 592 So.2d 1250 (Fla. 4th DCA 1992).
[3] The statute reads:

(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY. 
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" ... includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.