775 So.2d 258 (2000)
James C. BABER, III, Petitioner,
v.
STATE of Florida, Respondent.
No. SC96010.
Supreme Court of Florida.
August 31, 2000.
Rehearing Denied January 4, 2001.
Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio, Assistant Attorney General, Bureau Chief, and Robert R. Wheeler, Assistant Attorney General, West Palm Beach, Florida, for Respondent.
John C. Fisher, Bartow, Florida, for Florida Association of Criminal Defense Lawyers, Amicus Curiae.
SHAW, J.
We have for review a decision on the following question certified to be of great public importance:
DOES LOVE V. GARCIA, 634 So.2d 158 (Fla.1994) APPLY IN CRIMINAL PROSECUTIONS WHERE BLOOD ALCOHOL TEST RESULTS ARE OFFERED AS PROOF TO ESTABLISH AN ELEMENT OF THE OFFENSE, IF THE BLOOD ALCOHOL TESTS WERE ADMINISTERED BY HOSPITAL PERSONNEL FOR MEDICAL TREATMENT PURPOSES?
Baber v. State, 738 So.2d 379, 382 (Fla. 4th DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the certified question affirmatively and approve the district court's decision.
The State charged and the jury convicted petitioner of DUI manslaughter. The dispositive facts are as follows:
In the early evening of November 11, 1995, [petitioner] was observed driving erratically in a northerly direction on Military Trail in Palm Beach County. *259 He then turned left to go west, but went into the east bound lane of 45th Street. He struck an oncoming vehicle, killing the driver and injuring the passenger.
[Petitioner], who was seriously injured, was taken to St. Mary's Hospital in West Palm Beach where his blood was tested for alcohol content on the hospital's DuPont ACA IV clinical analyzer. [Petitioner] represents in his brief, and the parties agreed at oral argument, that this was done for purposes of medical treatment. This test, which uses blood serum, reflected a blood alcohol level of .274 at the time of the accident. The blood serum test result was then converted to a whole blood result reflecting a blood alcohol level of from .23 to .25.
. . . .
In order to introduce the blood alcohol report, the state called the hospital's medical records custodian who laid the necessary foundation under the business record hearsay exception, section 90.803(6)(a), Florida Statutes (1995). The state also called the head of the chemistry department of the hospital who controlled the laboratory. He testified that he had copied [petitioner]'s blood test results from the computer system, described the manner in which the report was prepared, and described how the machine, which the hospital had been using since 1991, determines blood alcohol levels based on blood serum testing. He also explained the daily and weekly maintenance performed on the machine according to the manufacturer's instructions.
Baber v. State, 738 So.2d 379, 380 (Fla. 4th DCA 1999). Petitioner objected to the submission of the record absent testimony from the laboratory technician who performed the test and chain of custody testimony. See id.
On appeal, petitioner raised, among other things, the issue of the admission of the disputed record under Love v. Garcia, 634 So.2d 158 (Fla.1994). The district court observed:
In Love[,] ... the Florida Supreme Court held in a personal injury case that a blood alcohol test report contained in a hospital record was admissible with no testimony other than that of the business record custodian of the hospital qualifying the report as a business record. The court reasoned that if such a report is sufficiently trustworthy to be relied on for medical treatment, it is sufficiently trustworthy to be admissible in evidence as a business record, unless the party opposing the admission can show that it is untrustworthy.
Id. at 380-81. Based on the foregoing, the court concluded that this Court's decision in Love applies in criminal cases and, therefore, the report was properly admitted as a business record through the testimony of the hospital's records custodian. See id. at 382. We agree.
The right of a defendant to confront his or her accusers is a basic constitutional right protected by both the United States and Florida constitutions.[1] The United States Supreme Court has explained:
The primary object of the [Confrontation Clause] was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives *260 his testimony whether he is worthy of belief.
Mattox v. United States, 156 U.S. 237, 242-43, 15 S.Ct. 337, 39 L.Ed. 409 (1895).
The exercise of a defendant's right to confront his or her accusers also implicates the defendant's right to due process since confronting one's accusers is essential to a fair trial. See Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). A defendant's right to notice "and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence; and these rights include... [the] right to examine the witnesses against him." In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948), cited in Chambers, 410 U.S. at 294, 93 S.Ct. 1038.[2]
Federal and Florida courts have recognized, however, that the right to confront one's accusers is not absolute. The Supreme Court has stated that exceptions to the Confrontation Clause are "not ... static, but may be enlarged from time to time if there is no material departure from the reason of the general rule." Snyder v. Massachusetts, 291 U.S. 97, 107, 54 S.Ct. 330, 78 L.Ed. 674 (1934), overruled on other grounds, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). This Court has said that hearsay may be admissible in a criminal trial where the testimony is such that "adversarial testing would add little to its reliability." Conner v. State, 748 So.2d 950, 956 (Fla.1999)(quoting Idaho v. Wright, 497 U.S. 805, 821, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)).
The statute establishing the admissibility of business records as an exception to the hearsay rule provides, in pertinent part:
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness.
§ 90.803(6)(a), Fla. Stat. (1995). This Court has held that medical records are properly admitted under this exception as long as the evidence satisfies the requirements contained in the subsection. See Love, 634 So.2d at 160. This Court further explained:
Once this predicate is laid, the burden is on the party opposing the introduction to prove the untrustworthiness of the records. If the opposing party is unable to carry this burden, then the record will be allowed into evidence as a business record....
Under the business record exception, the trustworthiness of medical records is presumed. Phillips v. Ficarra, 618 So.2d 312, 313 (Fla. 4th DCA 1993). Such trustworthiness is based on the test's general acceptance in the medical field and the fact that the test in question is relied upon in the scientific discipline involved. Andres v. Gilberti, 592 So.2d 1250, 1252 (Fla. 4th DCA 1992). Actual reliance on the test in each course of treatment is not required.
Love, 634 So.2d at 160.
The Fourth District's application of Love to criminal cases is supported by federal *261 precedent and the majority of states.[3] The United States Supreme Court has held that if hearsay is admitted under an exception "firmly rooted" in our jurisprudence, then the "[r]eliability can be inferred without more" and the prosecutor need not prove the unavailability of the declarant. Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). To that end, the Court stated that "business and public records exceptions would seem to be among the safest of the hearsay exceptions." Id. at 66 n. 8, 100 S.Ct. 2531 (quoting J. Broocks Greer, III, Comment, Hearsay, the Confrontation Guarantee and Related Problems, 30 La. L.Rev. 651, 668 (1970)); see White v. Illinois, 502 U.S. 346, 356-57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); Bourjaily v. United States, 483 U.S. 171, 183, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Federal circuit courts of appeal have held that hospital drug tests may be admitted under the business records exception in criminal cases and that application of the exception in this circumstance does not violate the Confrontation Clause. See United States v. Garnett, 122 F.3d 1016, 1018-19 (11th Cir.1997)(affirming district court's decision to admit drug test results under the business records exception); United States v. Norton, 867 F.2d 1354, 1364 (11th Cir.1989)(holding that business records are admissible in criminal cases under Federal Rule of Evidence 803(6) based on Bourjaily and Roberts); United States v. Baker, 855 F.2d 1353, 1359 (8th Cir.1988)("When made on a routine basis, laboratory analyses of controlled substances are admissible as business records under Federal Rule of Evidence 803(6).").[4]
The majority rule among state courts is that drug or alcohol tests performed in the usual course of business of a hospital are admissible in criminal cases under the business records exception. See, e.g., Kreck v. Spalding, 721 F.2d 1229, 1245-46 (9th Cir.1983)(upholding admission of drug test as business record in murder case under Washington law); State v. Russo, 3 Conn.App. 137, 485 A.2d 1335, 1339-40 (1985)(holding that trial court properly admitted hospital records under hospital/business record exception absent testimony from the physician who conducted the test, and thus defendant's confrontation right was not violated); McLean v. State, 482 A.2d 101, 104-05 (Del.1984); Dixon v. State, 227 Ga.App. 533, 489 S.E.2d 532, 535, 537 (1997); State v. Garlick, 313 Md. 209, 545 A.2d 27, 35 (1988); State v. Todd, 935 S.W.2d 55, 60-61 (Mo. Ct.App.1996). As the Maryland Court of Appeals stated:
The blood sample was not taken for the purpose of litigation. The testing was performed in the hospital and not by a police laboratory. And there were no discrepancies apparent on the face of the record. Thus no extensive foundation needs to be laid before this hospital report is admissible under the business record exception....
... Many hospital tests and procedures are performed routinely and their results are relied upon to make life and death decisions. The examining doctor relied on these objective scientific findings for Garlick's treatment and never *262 doubted their trustworthiness. Neither do we. This high degree of reliability, as we explained early on, permits introduction of the test results contained in the hospital records presented in this case without any need for showing unavailability of the technician and without producing the technician. Under these circumstances the constitutional right of confrontation is not offended.
Garlick, 545 A.2d at 34-35 (citations and footnotes omitted).[5]
Amicus Curiae Florida Association of Criminal Defense Lawyers cites to only one state with a directly contrary view-Mississippi. See Kettle v. State, 641 So.2d 746 (Miss.1994). In Kettle, the Mississippi Supreme Court expressed its view thusly:
An evidentiary rule can rise no higher in meeting constitutional standards than an evidentiary statute. While it is true that a custodian under the rule could introduce the records in his care and custody, he cannot satisfy the right to confront witnesses when properly invoked:
The subdivision only gives authenticity to the certificate being used as substantive evidence of the facts stated therein. To be used as the evidence of these facts without the accompanying testimony of the analyst who prepared the certificate, constitutional requirements must be met. This means there must be a pre-trial agreement by the defendant with the prosecuting attorney consenting to such and waiving the right to confront and cross-examine that witness.
Id. at 749-50 (quoting Barnette v. State, 481 So.2d 788, 791-92 (Miss.1985)).
The Kettle court relied, in part, on United States v. Oates, 560 F.2d 45 (2d Cir. 1977). The court's reliance on Oates, however, is misplaced because there the Second Circuit held that a drug test performed by law enforcement officials could not be admitted in a criminal trial as a public record since the report was made pursuant to an investigation against the accused. See id. at 84 (relying on Federal Rule of Evidence 803(8)(C), which prohibited admission of public records regarding "factual findings resulting from investigations made pursuant to authority granted by law"). In contrast, the alcohol test result being admitted in the instant case was performed by a hospital, which did not have an interest in the outcome of the future criminal case lodged against the defendant. Thus, we disagree with Kettle to the extent it is contrary to the majority view and, to the extent it relies on Oates, we find it distinguishable from the instant case.
Finally, petitioner argues that Love should not be applied in criminal cases based on State v. Strong, 504 So.2d 758 (Fla.1987), wherein we held that "the state or the defendant may have ... blood test evidence admitted [in a criminal case pursuant to] establishing the traditional predicates for admissibility, including test reliability, the technician's qualifications, and the test results' meaning." Id. at 760. *263 We find that petitioner's reliance on Strong is unavailing because it preceded our decision in Love; therefore, Love is controlling in the instant case.
Based on federal and state precedent, this Court holds that a hospital record of a blood test made for medical purposes, which is maintained by the hospital as a medical or business record, may be admitted in criminal cases pursuant to the business record exception to the hearsay rule. We emphasize, however, that defendants must be given a full and fair opportunity to contest the trustworthiness of such records before they are submitted into evidence. Thus, the certified question is answered in the affirmative and the decision below is approved.
It is so ordered.[6]
WELLS, C.J., and HARDING, ANSTEAD and QUINCE, JJ., concur.
PARIENTE and LEWIS, JJ., concur in result only.
NOTES
[1] See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right... to be confronted by the witnesses against him ...."); art. I, § 16(a), Fla. Const. (providing that an "accused ... shall have the right ... to confront at trial adverse witnesses....").
[2] See U.S. Const. amend. XIV, § 1 ("No State shall ... deprive any person of life, liberty, or property, without due process of law ...."); art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law....").
[3] With respect to federal precedent, it should be noted that section 90.403(6) is based on Federal Rule of Evidence 803(6). See Love v. Garcia, 611 So.2d 1270, 1280 (Fla. 4th DCA 1992)(Warner, J., dissenting), quashed on other grounds, 634 So.2d 158 (Fla.1994); Davis v. State, 562 So.2d 431, 433 n. 1 (Fla. 1st DCA 1990).
[4] Federal courts have noted the practical reality that cross-examination of technicians who perform these tests is unlikely to yield meaningful information since the tests are routine and repeatedly performed, such that it is unlikely that a technician would specifically remember the performance of one among many identical tests performed months (if not years) before trial. See Reardon v. Manson, 806 F.2d 39, 41-42 (2d Cir.1986); United States v. Bell, 785 F.2d 640, 643 (8th Cir.1986)(stating that producing the technicians who perform such tests "rarely leads to any admissions helpful to the party challenging the evidence").
[5] Quoting an earlier case, the Maryland court further observed:

It is difficult to conceive why this record should not be reliable. There is no motive for the person whose duty it is to make the entries, to do other than record them correctly and accurately. On the other hand, there is the strongest reason why he should: First, because of the great responsibility, he knowing that the treatment of the patient depends largely upon this record, and, if it be incorrect it may result, and probably will result, in the patient's failure to receive proper surgical or medical treatment, which failure might be followed by serious consequence or even death. Second, the entrant must realize and appreciate that his position is dependent upon the accuracy with which the record is made. Third, as was stated by Tindall, C. J., in Poole v. Dicas, 1 Bing. [(N.C.) 649, 653, 131 Eng. Rep. 1267, 1269 (1835)]: "It is easier to state what is true than what is false; the process of invention implies trouble, in such a case unnecessarily incurred."
Garlick, 545 A.2d at 31 (emphasis added) (quoting Globe Indem. Co. v. Reinhart, 152 Md. 439, 137 A. 43, 46 (1927)).
[6] We decline to address the additional issues raised by petitioner since they are outside the scope of the certified question and the decision below.