THOMPSON, C.J.
Larry K. Nimmons appeals his conviction for sexual battery on a person physically helpless to resist, contending that the court erred in admitting into evidence a *1154 laboratory report showing that the victim had ingested a sedative.[1] We affirm.
The victim and her boyfriend spent the day touring St. Augustine. Both drank alcoholic beverages throughout the day. At an outdoor café, they met Nimmons, who said he worked at the establishment, and who bought them several drinks. The victim and her boyfriend decided to spend the night in St. Augustine instead of driving back that night to Daytona Beach, where they lived. Nimmons said he knew of a reasonably priced motel and brought them there. The victim laid down on the bed, feeling sick, and eventually fell asleep. The boyfriend and Nimmons continued to drink, and the boyfriend passed out. The victim awoke with the realization that Nimmons was on top of her, his penis in her vagina. Her shorts and bathing suit bottom had been removed. She screamed, and Nimmons told her that the boyfriend had “said it was ok.” She ran to the bathroom and took a shower. The boyfriend called the police and grabbed Nim-mons, who was walking away. Police detained both men, and called for a female officer after finding the victim sitting naked and screaming on the floor of the motel room.
The victim was taken to a hospital, where a blood sample was taken and where a rape kit was utilized. The next morning, the victim suspected that her physical symptoms were not merely the result of alcohol consumption and went to a doctor. The doctor took urine samples from the victim and the boyfriend. The doctor gave each a cup labeled with his or her name, and observed them enter separate bathrooms, returning with full containers that were warm to the touch. The doctor tightly closed the containers and placed them in a refrigerator. A nurse took the containers from the refrigerator and placed them in sealed bags with laboratory forms. She placed the bags in a cooled lockbox outside the office door for pickup by a laboratory courier. The nurse and the courier had the only keys to the lockbox.
According to the testimony, when the laboratory receives a specimen, the information on the laboratory form is entered into the computer before the specimen bag is opened, and bar code labels are put on the form and on the sample. The testing equipment reads the bar code and the results are stored in the computer. A report is generated and is kept in the ordinary course of business. Such reports are relied upon by the ordering physicians.
The report received by the physician, who relies upon such reports, was that the victim’s urine tested positive for benzo-diazepines, a class that includes such drugs as Xanax, Valium, and Rohypnol, or “Roo-fies.” The blood test showed such low level of benzodiazepines it was scored as negative, but the chemical is easier to detect through a urine test because it collects in higher concentrations in urine. The boyfriend’s blood and urine tests were negative.
In Lave v. Garcia, 634 So.2d 158 (Fla.1994), a personal injury case, the court held that a hospital report was admissible under section 90.803(6)(a), Florida Statutes, the business records exception to the hearsay rule. The court reasoned that medical reports are presumed trustworthy, based on the test’s general acceptance in the medical field, and the fact that the test is relied upon in the scientific discipline involved. Id. at 160. Once the party offering the evidence lays a predicate pursuant to section 90.803(6)(a), the burden is on *1155 the party opposing admission to prove the untrustworthiness of the report. Id. In Baber v. State, 775 So.2d 258 (Fla.2000), the court applied Love to a criminal case, holding that “a hospital record of a blood test made for medical purposes, which is maintained by the hospital as a medical or business record, may be admitted in criminal cases pursuant to the business record exception to the hearsay rule.” Id. at 268.
Nimmons contends that the laboratory report was inadmissible because the report itself states: “SPECIMEN ANALYSIS WAS PERFORMED WITHOUT CHAIN OF CUSTODY HANDLING. THESE RESULTS SHOULD BE USED FOR MEDICAL PURPOSES ONLY AND NOT FOR ANY LEGAL OR EMPLOYMENT PURPOSES.” Nimmons argues that the report is untrustworthy on its face, and that the state did not affirmatively refute the report’s facial untrustwor-thiness. He further argues that there was a probability of tampering because the sample containers were not sealed, and seven people had access to the refrigerator in the doctor’s office.
We conclude that the warning notice does not take this case out of the orbit of Baber. In Andres v. Gilberti, 592 So.2d 1250 (Fla. 4th DCA 1992), a bicyclist sued a motorcyclist for personal injuries arising • out of a traffic accident. The bicyclist was treated at a hospital where a blood alcohol test was performed as a standard procedure. The report generated bore the legend, “This report is for medical purposes only. The testing parameters do not meet requirements for legal interpretation.” Id. at 1251. The bicyclist contended that the report was inadmissible solely because of the warning. The court held that although the warning could be read to show untrust-worthiness, it was discounted by the positive evidence of its trustworthiness presented at trial. Id. The court held that the warning should go to the weight of the evidence rather than its admissibility.
In the instant case there was also positive evidence of the trustworthiness of the test, including the medical reliability of the test itself and the chain of custody. In order to bar the introduction of relevant evidence due to a gap in the chain of custody, the defendant must show that there was a probability of tampering with the evidence, and a mere possibility of tampering is insufficient. Jordan v. State, 707 So.2d 816 (Fla. 5th DCA 1998). Furthermore, the test is relied upon by physicians for diagnostic purposes. Under these circumstances, we agree with the trial court’s conclusion that the warning implicated the weight but not the admissibility of the report. Under Baber and Love, medical reports are presumed trustworthy because, they are relied upon for medical treatment. Although in the instant case the warning may cause doubt on the report’s trustworthiness, in light of the supporting testimony we conclude that any doubt was a matter for the jury.
AFFIRMED.
PETERSON and PLEUS, JJ., concur.

. " 'Physically helpless' means unconscious, asleep, or for any other reason physically unable to communicate unwillingness to act.” § 794.01 l(l)(e).