[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 13, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-12203

_____

D. C. Docket No. 97-00555 CV-FAM

MELVEE TUCKER,

Petitioner-Appellant,

versus

DEPT. OF CORRECTIONS,
Michael W. Moore, Secretary,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 13, 2002)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

We recently held that the discretionary review exhaustion rule of O'Sullivan v. Boerckel, 526 U.S. 838, 119 S. Ct. 1728 (1999), applies to 28 U.S.C. § 2254 petitioners from Alabama, even those whose direct appeals were completed before that decision was released. See Smith v. Jones, 256 F.3d 1135 (11th Cir. 2001), cert. denied, 122 S.Ct. 1081 (2002). We left open the question of whether the rule would also apply to § 2254 petitioners seeking review of Florida convictions, and today we answer a small part of that question.

Melvee Tucker was convicted in 1978 for the 1974 murder of a convenience store clerk during a robbery, and he is currently serving a life sentence for that crime. In his direct appeal, Tucker argued that the following six actions of the trial court were error:

> (1) failure to dismiss the indictment because it contained no allegation of venue, (2) failure to dismiss the indictment because delay in prosecution violated appellant's rights to due process, (3) failure to dismiss the indictment because of under representation on the grand jury of Blacks, Latins, and females, (4) failure to suppress his confession as the product of an illegal arrest or as not voluntarily given, (5) failure to grant a mistrial for prejudicial prosecutorial comment, and (6) refusal to instruct on a lesser-included offense to which the statute of limitations had run....

2

Tucker v. State, 417 So.2d 1006, 1009 (Fla. Dist. Ct. App. 1982). All six of those points of error were rejected by Florida's Third District Court of Appeal in a divided decision. Id. Although the intermediate appellate court did affirm Tucker's conviction and sentence, it certified to the Florida Supreme Court "a question of great public importance" – an action that under Florida's constitutional and rule provisions invoked the appellate jurisdiction of the Florida Supreme Court – having to do with the first of Tucker's six points of error, the one involving the failure of the indictment to specify the place of the crime. Id. at 1013; see also id. at 1020 n.16 (Jorgenson, J., dissenting).

In the Florida Supreme Court, the parties addressed in their initial briefs the issue that had been certified and then, six months later, they filed additional briefs discussing an unrelated other issue that the intermediate appellate court had discussed at length and rejected. That other issue had to do with the trial court's refusal to give a lesser included offense instruction requested by Tucker because the statute of limitations had run on the lesser offense, which had been Tucker's sixth point of error before the intermediate appellate court. Tucker, 417 So.2d at 1010 - 13; Tucker v. State, 459 So.2d 306, 309 (Fla. 1984). Nothing in the record indicates that the briefing of that other issue was done at Tucker's initiative instead of at the direction of the Florida Supreme Court. In its opinion, the Court

3

discussed and decided adversely to Tucker both the issue raised in the certified question from the intermediate appellate court and the additional issue as well. Id. It did not address any of the other four issues that Tucker had raised in the appellate court as points of error 2, 3, 4, and 5.

After a number of other state court proceedings that are not relevant to the issues before us, in 1997 Tucker filed in federal district court a 28 U.S.C. § 2254 petition seeking relief from his Florida conviction and sentence on 16 grounds, four of which involved the same claims of error that he had presented to the state intermediate appellate court but that were not decided by the Florida Supreme Court. Citing O'Sullivan v. Boerckel, 526 U.S. 838, 119 S. Ct. 1728 (1999), the district court held that those four claims were procedurally barred from federal court review because Tucker had abandoned them on direct appeal by not raising them before the Florida Supreme Court. The district court rejected the remaining claims in Tucker's habeas petition for one reason or another, the result being denial of any relief.

A judge of this Court granted a certificate of appealability on the issue of whether by failing to raise before the Florida Supreme Court four of the points of error he unsuccessfully argued before the intermediate appellate court, Tucker had failed to exhaust those four claims with the result that he is procedurally barred

4

from having them decided on the merits in a federal habeas proceeding. In other words, does the <u>Boerckel</u> rule apply to those four claims in these circumstances?

In 1980, Article V of the Florida Constitution was amended "to limit[] the supreme court's appellate, discretionary, and original jurisdiction to cases that substantially affect the law of the state." Fla. R. App. P. 9.030, Committee Notes, 1980 Amendment. Under the terms of that amendment, there are two separate ways in which the Florida Supreme Court may review a decision of a district court of appeal. The first, commonly referred to as "conflict jurisdiction," provides that the Florida Supreme Court:

> May review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.

Fla. Const. Art. V, § 3(b)(3). Conflict jurisdiction does not require certification by the district court of appeal. It permits review, however, only when the Florida Supreme Court finds that certain prescribed conditions are satisfied: when it perceives an actual or potential conflict within the law of the state. This case does not involve, and we do not address, the question of whether and under what circumstances the <u>Boerckel</u> exhaustion doctrine may require a Florida prisoner to

5

seek state supreme court review pursuant to that court's conflict jurisdiction, i.e., under Art. V, § 3(b)(3).

The second way in which the Florida Supreme Court may review the decision of a district court of appeal, and the one relevant here, is pursuant to so-called "certified question" jurisdiction. Under that provision of the state constitution, the Florida Supreme Court:

> May review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance, or that is certified by it to be in direct conflict with a decision of another district court of appeal.

Fla. Const. Art. V § 3(b)(4). In Tucker's case, the district court of appeal certified a question to be "of great public importance" – the question having to do with the indictment's failure to specify the place in which the crime was committed. In other words, it was the "certified question jurisdiction" provision of section 3(b)(4), not the "conflict jurisdiction" provision of section 3(b)(3), under which Tucker was able to obtain Florida Supreme Court review in his appeal.

There is nothing in Fla. Const. Art. V § 3(b)(4) indicating that a petitioner has the right to seek review of additional issues piggyback style. Nor did any of the case law existing at that time give a petitioner such a right when the jurisdictional basis for review was § 3(b)(4).

6

The only decision at the time indicating that the Florida Supreme Court could go beyond the precise question that gave rise to its jurisdiction was Savoie v. State, 422 So.2d 308 (Fla. 1982), and that was a case in which jurisdiction to review existed under Art. V § 3(b)(3) based on a conflict in decisions, not under § 3(b)(4) based on a certified question from a district court of appeals. Id. at 309-10 ("We find conflict, as acknowledged by the district court in its opinion . . . . We have jurisdiction. Art. V, § 3(b)(3), Fla. Const."). Savoie established that the Florida Supreme Court has discretion to decide other issues when it reviews a case pursuant to its section 3(b)(3) conflict jurisdiction. See id. at 310 ("[O]nce we accept jurisdiction over a cause in order to resolve a legal issue in conflict, we may, in our discretion, consider other issues properly raised and argued before this Court." (emphasis added)). But Tucker's was not a conflict jurisdiction case. Moreover, the Savoie decision was not released until November 10, 1982, which was after Tucker had filed his opening brief in the Florida Supreme Court.

Of course, Tucker did file in April of 1983 an additional brief addressing one of the remaining five issues he had raised in the intermediate appellate court, but there is no indication that he filed that brief of his own initiative.[1] So, we do

_____

[1]Having some familiarity with how appellate courts operate, we believe that the briefing of the issue probably was at the direction of the Florida Supreme Court, instead of the result of some motion Tucker filed. Under the circumstances

7

not know if the existence of the additional brief evidences that at the time it was filed a defendant in a certified question jurisdiction case had the right to seek review of issues beyond the one certified, instead of simply the obligation to obey whatever briefing directions the Florida Supreme Court issued.

In the absence of a stronger indication that there was at the time an established right to seek review in those circumstances, the Boerckel rule does not

---

it appears to be the kind of issue that the Court probably realized, well into deciding the certified question issue, that it needed to decide as well. The fact that the issue was briefed so long after the initial briefs were filed also supports this theory. Although we only have Tucker's additional brief in the record before us, the cover of it indicates that the State was to file a response brief thereafter.

The cover of the brief addressing the other issue states that the case is "on petition for discretionary review," but that tells us nothing. The Florida Rules of Appellate Procedure uses the discretionary terminology to refer to all issues the Florida Supreme Court reviews on the basis of conflict jurisdiction or certified question jurisdiction. For example, Rules 9.120 and 9.900 (d) direct attorneys to file a notice invoking the supreme court's "discretionary jurisdiction" after the district court of appeal has certified a question. Rule 9.030(a) divides the supreme court's jurisdiction into three kinds: appeal, discretionary, and original. "Discretionary jurisdiction" includes both conflict jurisdiction under section 3(b)(3) and certified question jurisdiction under section 3(b)(4) of Article V of the Florida Constitution. It is "discretionary" because the supreme court is not required to hear any issue that reaches it under the provisions of section 3(b)(3) and (4). By contrast, in cases arising pursuant to the court's "appeal jurisdiction"—for example, in capital cases or in cases expressly declaring a state statute or constitutional provision invalid—the court is required to hear the case. Finally, the court's "original jurisdiction" refers to its power to issue, for example, writs of prohibition to courts and writs of mandamus and quo warranto to state officers and agencies.

apply. It requires that state prisoners invoke "one complete round of the State's established appellate review process" and use "the State's established appellate review procedures," but it does not require resort to any "extraordinary procedures." 526 U.S. at 845, 119 S.Ct. at 1732 - 33. The method of review involved in the Boerckel case was "a normal, simple, and established part of the State's appellate review process." Id. at 1733. Petitioning or moving the Florida Supreme Court to piggyback onto a certified question issue the decision of additional issues was not a normal and established part of Florida appellate procedure, at least not in 1982 and 1983.[2]

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

[2]Since Tucker's case was before the Florida Supreme Court, it has released decisions holding that it does have discretion in certified question cases to decide other issues. See Fulton County Administrator v. Sullivan, 753 So.2d 549, 553 n.3 (Fla. 1999) ("Given our jurisdiction on the basis of the certified question, we have jurisdiction over all of the issues raised in this case."); Feller v. State, 637 So.2d 911, 914 (Fla. 1994) ("Having jurisdiction on the basis of the certified questions, we have jurisdiction over all issues."). Those decisions came out too late to be relevant to our analysis, and we have no occasion to decide now whether the Boerckel rule would apply to a prisoner whose case came before the Florida Supreme Court on a certified question basis after those decisions had been issued.

Nor do we have any occasion to decide in this case any Boerckel issues relating to exercise of the Florida Supreme Court's conflict or other jurisdiction under Art. V, § 3(b)(3).

9

BARKETT, Circuit Judge, concurring:

Although I concur in the majority opinion, I write separately to note, additionally, that it would make no difference if Tucker's appeal had taken place after the Florida Supreme Court announced that it possesses jurisdiction to consider issues beyond the one presented by the certified question. See Feller v. State, 637 So.2d 911, 914 (Fla. 1994) ("Having jurisdiction on the basis of the certified questions, we have jurisdiction over all issues."). The exhaustion inquiry under O'Sullivan v. Boerckel requires us to look only to what occurred (or failed to occur) in the course of the "standard review process." 526 U.S. 838, 844 (1999); see also Dixon v. Dormire, 263 F.3d 774, 778 (8th Cir. 2001). Thus, if a proceeding lies outside of the normal appellate process, a petitioner's failure to present every claim in that proceeding will not constitute a lack of exhaustion under Boerckel. See Boerckel, 526 U.S. at 844. Because proceedings pursuant to the Florida Supreme Court's certified question jurisdiction constitute an extraordinary procedure beyond the scope of standard appellate review, I conclude that a petitioner's failure to present all of his claims there, even after Feller, does not constitute a lack of exhaustion.

As Boerckel explained, the exhaustion doctrine is rooted in the idea of comity. See Boerckel, 526 U.S. at 844. The Court found that comity requires

11

prisoners to raise all federal constitutional claims in the state's "standard review process" because otherwise the state courts might be deprived of a "full and fair opportunity to resolve federal claims before those claims are presented to the federal courts . . . ." Id. at 845. But the requirement extends only to proceedings that fall within the normal system of appellate review, because as long as the claims were raised there, the state courts have been given a fair opportunity to review those claims and order any necessary relief. See id. at 844 (explaining that "[28 U.S.C.] Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims." (emphasis in original)). To require prisoners to raise all of their claims in extraordinary proceedings in addition to proceedings that are part of the standard review process not only is not required by the doctrine of comity, but actually disserves the interests of comity by transforming state proceedings that have distinctive and narrower purposes into general forums for the relitigation of claims that have already been fully adjudicated in the course of normal appellate procedures.

Boerckel examined whether the exhaustion doctrine requires state prisoners to seek certiorari review, or in other words, to seek review in the state supreme court when that court has discretionary control over its docket. See id. at 843 ("The particular question posed by this case is whether a prisoner must seek review

12

in a state court of last resort <u>when that court has discretionary control over its</u> <u>docket</u>." (emphasis added)).  The decisive fact for the <u>Boerckel</u> Court was that the Illinois Supreme Court possesses unlimited discretion to hear any case it wishes. The Court in <u>Boerckel</u> observed that no Illinois rule controlled or measured the supreme court's discretion, <u>id.</u> at 846, and that the supreme court "has the opportunity to <u>decide</u> which cases it will consider on the merits."  <u>Id.</u> (emphasis in original).  The Court thus reasoned that, because the Illinois Supreme Court has the power to hear any case that is presented to it, it is part of the state's normal system of appellate review, and a prisoner's failure to raise his claims in a petition for certiorari could deprive Illinois of a full and fair opportunity to adjudicate the claims prior to federal review.

In Florida, the decision of the district court of appeal is the final decision in the course of the normal appellate process.  There is no general certiorari review by which the supreme court has the power to hear any case it pleases; the supreme court does not have, in <u>Boerckel</u>'s words, "discretionary control over its docket." <u>Id.</u> at 843.  The court does not have unfettered discretion "to decide which cases it will consider on the merits" because review pursuant to section 3(b)(4) is available only after a district court of appeal elects to certify a question to the court.  If a question is not certified by the district court of appeal, the supreme court will be

13

unable to hear the case. In other words, the control over the supreme court's docket lies with the district courts of appeal, rather than with the supreme court itself. Furthermore, a district court of appeal may certify a question for supreme court review only under very limited circumstances: the question must be "of great public importance," or the decision must be in "direct conflict" with the decision of another district court of appeal. See Fla. Const. Art. V § 3(b)(4). In light of the fact that the supreme court does not have discretion to hear any case it pleases, and of the limited purposes served by certified question proceedings, it cannot be said that those proceedings are part of the standard review process.

Florida's constitutional design gives the supreme court an opportunity to resolve a question of "great public importance" when a district court of appeal certifies that the question satisfies that condition. Although Feller indicates that the supreme court possesses jurisdiction to decide other issues that it may consider necessary to its decision, Feller's simple statement regarding jurisdiction certainly does not describe certified question proceedings as a forum for the relitigation of all claims. On the contrary, the supreme court repeatedly refuses to address any claim beyond the scope of the certified question. See, e.g., Major League Baseball v. Morsani, 790 So. 2d 1071, 1080 n.26 (Fla. 2001) ("We decline to address the other claim . . . because it is outside the scope of the certified question and was not the

14

basis of our discretionary review. As a rule, we eschew addressing a claim that was not first subjected to the crucible of the jurisdictional process set forth in article V, section 3, Florida Constitution."); Crocker v. Pleasant, 778 So. 2d 978 (Fla. 2001); Hearndon v. Graham, 767 So. 2d 1179 (Fla. 2000); Friedrich v. State, 767 So. 2d 451 (Fla. 2000); Barber v. State, 775 So. 2d 258 (Fla. 2000); Fulton County Adm'r v. Sullivan, 753 So. 2d 549 (Fla. 1999); McMullen v. State, 714 So. 2d 368 (Fla. 1998); Beach v. Great Western Bank, 692 So. 2d 146 (Fla. 1997); W.R. Grace & Co. v. Waters, 638 So. 2d 502 (Fla. 1994); Jeffries v. State, 610 So. 2d 440 (Fla. 1992); Stephens v. State, 572 So. 2d 1387 (Fla. 1991); State v. Simpson, 554 So. 2d 506 (Fla. 1989).

Boerckel makes clear that, under the exhaustion doctrine, it remains with the states to define what procedures are part of the normal system of state appellate review. 526 U.S. at 848-49. In my view, the determinative issue in this case is that both the constitutional design of the Florida Supreme Court's jurisdiction and the statements of that court make clear that certified question jurisdiction is an extraordinary procedure for resolving questions of great public importance, and not a forum for relitigating every claim.[1] Because the certified question proceeding lies

---

[1]The fact that Tucker's appeal took place long before Feller was decided certainly renders irrelevant any argument that Feller created a new exhaustion obligation. But since I find that argument unpersuasive in any event, I see little

15

outside of the normal appellate process, and because the district court of appeal is the forum with the responsibility for full adjudication of the case, the state courts have not been deprived of a fair opportunity to review a petitioner's federal constitutional claims simply because every claim is not raised again in the certified question proceeding. Consequently, it does not create an exhaustion problem in the federal courts.

---

reason to consider only pre-Feller cases.