ON MOTION FOR REHEARING
POLEN, C.J.
We withdraw our previously filed opinion dated November 20, 2002 and replace it with the following.
The county court has certified the following question of great public importance to this court pursuant to Florida Rule of Appellate Procedure 9.160(b):
DOES THE STANDARD DUI JURY INSTRUCTION, WHICH INCLUDES BOTH THE IMPAIRMENT THEORY AND THE UNLAWFUL BLOOD ALCOHOL THEORY, HAVE THE EFFECT OF GIVING AN INSTRUCTION ON THE STATUTORY PRESUMPTIONS OF IMPAIRMENT IN SECTION 316.1934(2)[1], FLORIDA STATUTES (2001), SUCH THAT IT IS ERROR TO GIVE THE STANDARD DUI JURY INSTRUCTION WHERE BLOOD ALCOHOL RESULTS WERE ADMITTED VIA THE TRADITIONAL PREDICATE?
We have accepted jurisdiction pursuant to Florida Rules of Appellate Procedure 9.030(b)(4)(A) and 9.160(d). We answer the question in the negative. Since we have accepted jurisdiction over the certified question, we also have jurisdiction to address the county court’s order on a motion to suppress, the merits of which are addressed, infra. See Fla. R.App. P. 9.160(f)(1); 9.140(c)(1)(B).
At approximately 4:00 a.m. on January 5, 2001, Davie Police Officer Lance Seltzer responded to a one-car accident. He observed a vehicle had crashed its front-end into a tree in the median. He then spoke with two eye-witnesses who informed him the vehicle had “just driven off the road” into the tree. Seltzer then made contact with Jennifer Schreiber, who was standing by the car, and was identified as its driver. According to Seltzer, he noticed a strong odor of alcohol emanating from her face. She told him she did not know what had happened and that both her ankles were in a lot of pain. She was given medical attention at the scene, and was transported to Broward County General Hospital where she was later treated for two fractured ankles. Schreiber was not placed under arrest at this time.
Seltzer went to the hospital and made contact with Schreiber. He claimed she *346 still smelled of alcohol as they spoke. Seltzer asked her if he could take a sample of her blood; however, he did not read her her rights under the Implied Consent Law, §§ 316.1932, 316.1933, 316.1934, Fla. Stat. (2001). See § 316.1932(l)(a)(2)(e), Fla. Stat. (2001)(one capable of responding may refuse to submit to blood test, provided his or her license will be suspended for a year for such refusal, and the refusal itself is admissible as evidence in any criminal proceeding). Schreiber consented to Seltzer’s request and a nurse took two blood draws. These blood draws reflected a blood alcohol content (“BAC”) of 0.15 and 0.14, respectively.
Thereafter Schreiber was charged with driving “while she was under the influence of an alcoholic beverage to the extent that her normal faculties were impaired and/or with a [BAC] of 0.08 or more,” in contravention of Section 316.193, Fla. Stat. (2001). Schreiber moved to suppress the results of the January 5 blood tests that had been taken at Officer Seltzer’s bequest, alleging her “consent” had not been knowing and voluntary, and Seltzer had lacked the authority to seize her blood. Schreiber also moved to strike that portion of the information which provided she had operated a motor vehicle “with a[BAC] of 0.08 or more,” relying on this court’s original opinion in Dodge v. State, 26 Fla. L. Weekly D1550 (Fla. 4th DCA June 20, 2001), which had held since the Implied Consent Law was “insufficient,” a jury could not be instructed on the presumption of impairment. See Miles v. State [Miles II], 775 So.2d 950 (Fla.2000)(holding FDLE procedures for handling blood samples, as delegated in the Implied Consent Law, are inadequate, and therefore the State is not entitled to the presumptions of impairment associated with the Implied Consent statutory scheme). Meanwhile, the State had filed a motion for approval of a subpoena duces tecum for Schreiber’s medical records from Broward General, which was granted. Schreiber moved to suppress these medical records as well.
All pending motions came before the county court on July 17, 2001. Testimony was received from both Officer Seltzer and Schreiber regarding the circumstances surrounding the January 5 blood draws. Expressly relying on this court’s June 20, 2001 opinion in Dodge, on which rehearing was pending, the county court granted Schreiber’s motion to strike that portion of the information which provided she had driven “with a[BAC] of 0.08 or more.” The court continued to rule on the two suppression motions, granting Schreiber’s motion to suppress the results of the January 5 blood draws, but denying her motion to suppress the subpoenaed medical records.
Subsequent to the county court’s orders entered below, this court withdrew its original opinion in Dodge, substituting a new opinion on rehearing. Dodge v. State, 805 So.2d 990 (Fla. 4th DCA 2001). Given our opinion on rehearing in Dodge, we answer the certified question in the negative. Florida law authorizes two alternative theories for the crime of driving under the influence: driving while one’s normal faculties are “impaired” [“impairment theory”], or driving with a blood alcohol level of 0.08 or higher [“unlawful blood alcohol theory — DUBAL”]. § 316.193(1)(a),(b), Fla. Stat. (2001). As our Supreme Court noted in Robertson v. State, 604 So.2d 783 (Fla.1992), the second theory, DUBAL, is a strict-liability theory of DUI, since the fact of operating a motor vehicle with a BAC of [0.08] or higher constitutes the offense of DUI even if impairment cannot be proven. Id. at 792 n. 14 (emphasis supplied). The court further noted there is some redundancy in the statutory DUI scheme, since impairment is presumed if *347 the defendant’s BAC is [0.08] or higher. See § 316.1984(2), Fla. Stat. However, the presumption of impairment created by s. 316.1934(2) is a moot concern if the State proves beyond a reasonable doubt that the defendant operated a motor vehicle with an unlawful BAC, ie., 0.08 or higher. Id. Adding further confusion to this redundancy issue, in Miles II, our Supreme Court held the statutory presumption provided for in s. 316.1934(2) was invalid, ie., the State is not legally entitled to the presumptions of impairment associated with the Implied Consent Law. Miles II, 775 So.2d at 953-56. Yet, the court reaffirmed the admissibility of blood results introduced through the three-prong predicate discussed in Robertson, and not introduced pursuant to the Implied Consent Law. Id. at 955-57 (but noting blood results introduced through the Robertson predicate are not entitled to the Implied Consent presumptions, which are specially contingent upon compliance with the Implied Consent Law); see Robertson, 604 So.2d at 789 (the party seeking to introduce test results must establish: (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment, and (3) expert testimony must be presented concerning the meaning of the test).
On rehearing in Dodge, we adopted the Second District’s analysis in Tyner v. State, 805 So.2d 862 (Fla. 2d DCA 2001), holding where BAC results have been properly admitted under the Robertson predicate, and not vis-a-vis the Implied Consent Law, the court may instruct the jury that if it finds the defendant did in fact drive with an unlawful BAC, the defendant is guilty of the crime of DUI. Dodge, 805 So.2d at 994-95. As such, the standard jury instruction, which includes the alternative theories of DUI (impairment and DUBAL), does not improperly instruct the jury on the Implied Consent presumption of impairment, since the jury can be instructed on DUBAL (provided blood results have been introduced via the Robertson predicate) absent proof of any impairment. The certified question is thus answered in the negative. Consequently, that portion of the lower court’s order striking that portion of the information which provides Schreiber had driven “with a BAC of 0.08 or more” is reversed as well, where the introduction of blood test results via the Robertson predicate has not been foreclosed.[2]
The lower court’s order granting Schreiber’s motion to suppress the January 5, 2001 test results is affirmed. We find no error in the lower court’s findings Schreiber’s consent was not knowing and voluntary under the totality of the circumstances. See State v. Jerome, 541 So.2d 756, 757 (Fla. 4th DCA 1989). Furthermore, we hold Officer Seltzer lacked authority to compel Schreiber’s blood pursuant to section 316.1933(1), where the only injury resulting from the accident was Schreiber’s two fractured ankles, from which she fully recovered; Seltzer had no *348 probable cause that her operation of the motor vehicle had resulted in the “death or serious bodily injury of a human being.” § 316.1933(1), Fla. Stat. (2001); see Galgano v. Buchanan, 783 So.2d 302 (Fla. 4th DCA 2001)(broken leg resulting in 5% permanent impairment did not constitute “serious bodily injury” under section 316.1933(1)); cf. Gerlitz v. State, 725 So.2d 393 (Fla. 4th DCA 1998)(compelled blood provisions of section 316.1933(1) applicable where victim of car accident suffered a broken back). Where Officer Seltzer lacked authority to compel Schreiber’s blood, and Schreiber’s consent to the blood draws conducted pursuant to his request was ineffectual, the lower court acted correctly in suppressing the results of those blood draws.
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with the foregoing opinion.
GUNTHER and GROSS, JJ., concur.

. Section 316.1934(2), Florida Statutes (2001), in pertinent part, provides:
At the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving, or in actual physical control of, a vehicle while under the influence of alcoholic beverages or controlled substances, when affected to the extent that the person's normal faculties were impaired or to the extent that he or she was deprived of full possession of his or her normal faculties, the results of any test administered in accordance with s. 316.1932 or s. 316.1933 and this section are admissible into evidence when otherwise admissible, and the amount of alcohol in the person’s blood or breath at the time alleged, as shown by chemical analysis of the person's blood, or by chemical or physical test of the person's breath, gives rise to the following presumptions:
(c) If there was at that time a blood-alcohol level or breath-alcohol level of 0.08 or higher, that fact is prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired. Moreover, such person who has a blood-alcohol level or breath-alcohol level of 0.08 or higher is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood-alcohol level or breath-alcohol level. (Emphasis supplied.)

. We note Schreiber has not challenged the lower court’s denial of her motion to suppress the subpoenaed medical records, which contain blood test results, in this appeal. See Robertson, 604 So.2d at 789-91 (test results of blood drawn for exclusively medical purposes are outside the scope of the Implied Consent Law, and may be seized and used as evidence in DUI prosecutions). If admitted at trial, this evidence would provide alternative evi-dentiary support for the giving of a jury instruction encompassing the DUBAL theoiy of DUI. See Baber v. State, 775 So.2d 258, 263 (Fla.2000)(hospital records of a blood test made for medical purposes may be admitted in criminal cases pursuant to the business record exception to the hearsay rule; however, defendants must be given a full and fair opportunity to contest the trustworthiness of such records before they are submitted into evidence).