LAMBERT, J.
*1189 Green Tree Servicing, LLC ("Green Tree") appeals the trial court's involuntary dismissal of the mortgage foreclosure action it brought against the borrower, Jill-Capri Simms. At the close of Green Tree's case-in-chief, the court granted Simms's motion to dismiss, finding that Green Tree had misapplied a pre-suit $ 9203.47 payment allegedly made by Simms to cure the then-existing default on the subject promissory note and mortgage. Green Tree argues that the trial court abused its discretion in excluding certain business records that, if admitted into evidence, would have shown that Simms did not make the $ 9203.47 payment and thus failed to cure the default. It further asserts that the court erred by improperly weighing the evidence when granting Simms's motion for involuntary dismissal. Because Green Tree's first argument is both meritorious and dispositive, we reverse the final order of involuntary dismissal and remand for a new trial. As a result, we find it unnecessary to address Green Tree's second argument.
At trial, Green Tree called Simms as its first witness. The original note and a copy of the mortgage at issue were admitted into evidence through her without objection. Also admitted into evidence was a March 14, 2012 default letter sent by Green Tree to Simms pursuant to paragraph 22 of the mortgage. This letter provided Simms thirty days to pay the sum of $ 6450.48 to cure the existing default on the note and mortgage resulting from her alleged failure to pay certain monthly mortgage payments; otherwise, the entire balance owed on the note would be accelerated. When questioned at trial about payments that she may have made on the note and mortgage during 2012, Simms testified that she had made some payments but could not specifically recall how much she had paid.
Green Tree next called Lacelia Knight to testify. Knight had worked as a "senior collector" for Green Tree for five years and, at the time of trial, was employed by Green Tree as a "foreclosure mediation representative." Through Knight, Green Tree's loan payment history, reflecting the payments received by Green Tree on the loan and any disbursements made by it, was admitted into evidence under the business records exception to the hearsay rule, as codified in section 90.803(6)(a), Florida Statutes (2016).[1] Pertinent here, the payment history reflected that on April 23, 2012, Green Tree received a payment on this loan account in the sum of $ 9203.47. Knight explained that the coding entry in the payment history showed that this payment was not personally made by Simms. Knight further testified that Green Tree applied the payment towards Simms's loan escrow balance, not to pay or otherwise satisfy the $ 6450.48 default amount described in its March 14, 2012 letter to Simms. The trial court would later grant *1190 the involuntary dismissal based upon this "misapplication."
To explain this $ 9203.47 payment received and why it was not applied to cure the default, Green Tree next sought to admit into evidence, also under section 90.803(6)(a), its collection notes from August 2011 through December 2015. Knight testified as to how Green Tree keeps collection notes as a part of its regularly conducted business activity and that it was Green Tree's regular practice to do so. She also testified to her first-hand, extensive knowledge and experience as to how Green Tree contemporaneously generates and enters its collection notes. Knight explained that whenever Green Tree makes an outward call to the borrower or receives inbound calls or information into its system, notes about each event are contemporaneously entered into Green Tree's records by its employees, and that once these collection notes are entered, they cannot be, nor are they, edited or redacted.
Pertinent to the specific issue before us surrounding the $ 9203.47 payment and construing the evidence most favorably to Green Tree, the collection notes, if they had been admitted into evidence, would have shown that approximately two weeks after Green Tree sent to Simms the aforementioned March 14 default letter, Simms telephoned Green Tree, advising that the master bedroom of the mortgaged property had been damaged by a flood and that she had filed a damage claim with her insurer, Universal Insurance Company. Thereafter, on April 11, 2012, the records indicated that Green Tree received estimates from an adjuster with the insurer, and from Simms's contractor, Paul Davis Restoration, that the necessary work to repair the bedroom would cost $ 9203.47.
Slightly less than two weeks later, the collection notes reflected that a check for $ 9203.47 was received by Green Tree from Universal Insurance Company to pay for Simms's water damage claim. Green Tree also received a copy of a work authorization document from Paul Davis Restoration. The collection notes reflected that on April 24, 2012, Simms notified Green Tree to contact her contractor directly "if anything else is needed."
Two days later, the collection notes showed that Green Tree disbursed a check payable to Simms or Paul Davis Restoration in the amount of $ 4601.73, which is approximately one-half of the $ 9203.47 Green Tree had previously received from Simms's insurer. Thereafter, in August 2012, after Green Tree had received from the contractor color photographs of the work performed, paid receipts, and a certificate of completion demonstrating that the repair work had been successfully accomplished, it issued a second check, this time in the amount of $ 4601.74, again payable to Simms or Paul Davis Restoration, thus totaling the $ 9203.47 that Green Tree had previously received.
Despite these collection notes appearing to be wholly relevant to address or refute Simms's claim that she personally had paid the sum of $ 9203.47 to cure the aforementioned default in the note and mortgage, Simms objected to their admissibility as being "irrelevant." She also objected that the collection notes should not be admitted because they were a summary of records prepared under section 90.956, Florida Statutes, without Green Tree having provided her with the statutorily-required notice of its intent to use summaries.[2] Lastly, *1191 Simms argued that the collection notes were inadmissible because they were prepared "in anticipation of litigation." The trial court found the collection notes to be "unreliable" and excluded them from evidence.
"A trial court has wide discretion in determining the admissibility of evidence, and, absent an abuse of discretion, the trial court's ruling on evidentiary matters will not be overturned." Bank of N.Y. Mellon v. Johnson , 185 So.3d 594, 597 (Fla. 5th DCA 2016) (quoting LaMarr v. Lang , 796 So.2d 1208, 1209 (Fla. 5th DCA 2001) ). That discretion, however, is limited by the rules of evidence. Id. (quoting Michael v. State , 884 So.2d 83, 84 (Fla. 2d DCA 2004) ). We conclude that the trial court here abused its discretion. The witness, Knight, sufficiently laid the predicate for the admissibility of these records, testifying that these collection notes were contemporaneously made at the time of the event, they were kept in the course of Green Tree's regularly conducted business activity by a person with knowledge, and it was Green Tree's regular practice to create these records. Moreover, Knight was clearly "well enough acquainted with the activity to give the testimony," Berdecia , 169 So.3d at 213, having personally used the same process in preparing similar collection notes entries for Green Tree for five years.
"Once the party offering the evidence lays a predicate pursuant to section 90.803(6)(a), the burden is on the party opposing admission to prove the untrustworthiness of the report." Nimmons v. State , 814 So.2d 1153, 1154-55 (Fla. 5th DCA 2002) (citing Love v. Garcia , 634 So.2d 158 (Fla. 1994) ). Simms failed to meet her burden to show that the records were untrustworthy. First, contrary to her argument, these records were highly relevant to Green Tree's case as they would appear to completely negate Simms's claim or defense that she "cured," pre-suit, the default described in the March 14 letter by paying the sum of $ 9203.47. As argued by Green Tree, its collection notes instead accurately showed that it was Simms's insurer, and not Simms, that paid to Green Tree the $ 9203.47 for the purpose of settling Simms's water damage claim. And, contrary to the trial court's basis for involuntarily dismissing this action, this evidence would support Green Tree's position that it did not misapply this $ 9203.47 payment but, rather, appropriately paid this money to Simms and her contractor to repair the water damage to Simms's home, as it was required to do under paragraph 5 of the mortgage.[3]
Second, these collection notes were not summaries prepared under section 90.956, Florida Statutes, but were the actual real-time entries. Stated differently, Green Tree did not prepare a separate summary of the collection notes and thereafter seek *1192 to enter the summary, rather than the notes themselves, into evidence. Finally, contextually, the pertinent entries in the collection notes as to Simms's water damage claim described above were clearly not prepared in "anticipation of litigation" regarding Simms's alleged separate failure to pay certain monthly payments due on her note and mortgage.
In conclusion, the collection notes should have been admitted into evidence. If they had been, Simms's motion for involuntary dismissal would have lacked merit because the trial court would have been required to view the evidence and all inferences of fact, namely that Simms did not cure the default because she did not make this $ 9203.47 payment, in the light most favorable to Green Tree, as the non-moving party. See Bank of N.Y. Mellon v. Burgiel , 248 So.3d 237, 238 (Fla. 5th DCA 2018). Accordingly, we reverse the final order of involuntary dismissal and, as requested by Green Tree, remand for a new trial.
REVERSED and REMANDED for further proceedings consistent with this opinion.
COHEN and HARRIS, JJ., concur.

This exception allows a party to offer into evidence a memorandum, report, record, or data compilation of acts or events made at or near the time of the acts or events described therein, by a person with knowledge, if kept in the course of regularly conducted business activity and if it was the regular practice of that business to make such a memorandum, report, etc., notwithstanding the availability of the declarant as a witness. Nationstar Mortg., LLC v. Berdecia , 169 So.3d 209, 212-13 (Fla. 5th DCA 2015) (quoting Yisrael v. State , 993 So.2d 952, 956 (Fla. 2008) ).

Section 90.956, Florida Statutes (2015), provides, in pertinent part, that:
When it is not convenient to examine in court the contents of voluminous writings, recordings, or photographs, a party may present them in the form of a chart, summary, or calculation by calling a qualified witness. The party intending to use such a summary must give timely written notice of his or her intention to use the summary ... and shall make the summary and the originals or duplicates of the data from which the summary is compiled available for examination or copying, or both, by other parties ....

Paragraph 5 of the mortgage reads, in pertinent part:
Property Insurance ...
....
In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property ....
(Emphasis added).