546 So.2d 741 (1989)
Annette JOHNSON, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-2819.
District Court of Appeal of Florida, First District.
June 30, 1989.
*742 Sally G. Schmidt, Florida Rural Legal Services, Inc., Belle Glade, for appellant.
Laurel E. Hopper, West Palm Beach, for appellee.
ERVIN, Judge.
Appellant, Annette Johnson, seeks review of an order rendered by the Department of Health and Rehabilitative Services, Office of Public Assistance Appeal Hearings (HRS), determining that she intentionally violated provisions of the food stamp program and imposing, as a sanction therefor, a six-month disqualification penalty. Because HRS failed to establish by clear and convincing evidence that appellant intentionally violated the provisions of the food stamp program, we reverse.
HRS sought to prove its case at the disqualification hearing by presenting the testimony of two investigators from the Office of the Auditor General, Division of Public Assistance Fraud (DPAF), and submitting eight exhibits, only two of which tended to show the existence of the alleged unreported income. Exhibit 4, the first of the two pertinent exhibits, consisted of several documents, including an "Employment Verification" form which named appellant as an employee of Turner House Restaurant and provided basic employment information, and an "Employee Earnings Information" form, indicating the total gross earnings paid to appellant by Turner House Restaurant during each pay period. A notarized affidavit executed by Tom Turner, the President of Turner House Restaurant, certified that Exhibit 4 was either a true and accurate copy of or a compilation of documents prepared and maintained by him in the regular course of his business and that he was the official custodian of the documents.[1] However, the two forms were actually prepared by Investigator Goldfine of the DPAF after she had interviewed Mr. Turner and reviewed his payroll records. Goldfine, however, was unable to say whether the payroll records were completed at or near the time the wages were supposedly paid to appellant, and neither Turner himself nor any other employee of Turner House Restaurant was present at the hearing to testify.
Exhibit 5 was the second exhibit offered by HRS for the purpose of showing the existence of the unreported income. It, too, was accompanied by a notarized affidavit executed by a senior investigator with the DPAF certifying that the document was a true and accurate reproduction of a data compilation which had been authorized and filed with the DPAF. The exhibit consisted of several documents, including a computer printout entitled "Income Verification Report for Food Stamp Cases," disclosing that appellant had earned $819.01 from Turner House Restaurant during the fourth quarter of 1986. Investigator Raper of the DPAF testified that the printout was generated by the Department of Commerce and was obtained by running appellant's social security number through the department's computers. Raper commented that the document merely provides an impetus for investigation by supplying a time period and an approximate amount of earnings, which must then be verified by further investigation and direct contact with the employer. Raper had no personal knowledge regarding the contents of the report and stated it was his understanding that the employers routinely provided such wage information to the Department of Commerce.
The documents that comprise Exhibits *743 4 and 5 are clearly hearsay.[2] It is well settled that hearsay is admissible in an administrative setting, however, hearsay alone is insufficient to support a finding unless it would be admissible over objection in a civil action. See Harris v. Game and Fresh Water Fish Comm'n, 495 So.2d 806, 808 (Fla. 1st DCA 1986); § 120.58(1)(a), Fla. Stat. (1987); Fla. Admin. Code Rule 10-2.060(1) (1988). Accordingly, in order for HRS to meet the burden of proof imposed when it relies upon hearsay, such evidence must be corroborated by non-hearsay, or the hearsay evidence must be admissible under some established exception to the hearsay rule.
We find nothing in the form of non-hearsay that tends to corroborate the hearsay contained in Exhibits 4 and 5. We so conclude because  notwithstanding the two DPAF investigators' testimony  neither of the investigators possessed personal knowledge regarding the sources of the employment and income information, as reflected on the submitted documents. Consequently, their testimony regarding the employment records merely amounted to additional hearsay.
Turning next to the question of applicable hearsay exceptions, HRS contends the exhibits are admissible under the public records[3] and business records[4] exceptions. We do not agree that Exhibit 5 qualifies under the public records exception, because in our judgment the report lacks sufficient trustworthiness to be admissible pursuant to the requirement of such exception. See Juste v. Department of Health and Rehabilitative Servs., State of Fla., OFR/DPAF, 520 So.2d 69, 72 (Fla. 1st DCA 1988) (although computer printouts are arguably public records, their reliability was placed in doubt by the testimony of a witness admitting that errors can occur when social security numbers are used to trace earnings).
As to the documents compiled within Exhibit 4, neither can we agree with HRS's argument that they would be admissible over objection as business records. While the documents themselves might qualify as the DPAF's business records, the statements contained in the documents relating to Turner House Restaurant's business are simply hearsay within hearsay and would only be admissible if they, too, conformed to the requirements of the business records exception to the hearsay rule. Harris, 495 So.2d at 808-09; Van Zant v. State, 372 So.2d 502, 503 (Fla. 1st DCA 1979), § 90.805, Fla. Stat. (1987).
If evidence is to be admitted under one of the exceptions to the hearsay rule, it must be offered in strict compliance with the requirements of the particular exception. Thus, evidence falling within the parameters of the business records exception is admissible only if the custodian or other qualified witness, acting within the scope of that business, is available to testify at the proceeding concerning the records. Juste, 520 So.2d at 71. See also § 90.803(6), Fla. Stat. (1987); Harris, 495 So.2d at 808 n. 3; C. Ehrhardt, Florida Evidence § 803.6 (2d ed. 1984).
*744 In the instant case, the "Employment Verification" and "Employee Earnings Information" forms contained in Exhibit 4 were not admissible under the business records exception, because they were not kept by the employer in the regular course of his business. Furthermore, the documents were not introduced at the hearing by the custodian of the employer's business records, or by any other qualified witness who acted within the course of the employer's business. Because the only documents tending to support HRS's contention that appellant received wages which she failed to report were hearsay, not admissible under any established exception, we agree with appellant that the order is not supported by clear and convincing evidence.
Not only did HRS fail to establish the existence of the unreported income by clear and convincing evidence, it also failed to establish the intent element under the same standard.[5]See Smith v. Department of Health and Rehabilitative Servs., 522 So.2d 956, 959 (Fla. 1st DCA 1988) ("Mere failure to report income does not establish by clear and convincing evidence that there was intent to commit an intentional program violation.").
REVERSED.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] Neither Turner's original payroll records reflecting wages paid to appellant, nor copies thereof, were introduced at the hearing.
[2] "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (1987).
[3] Section 90.803(8), Florida Statutes (1987), authorizes the admission of:

Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness.
[4] Section 90.803(6)(a), Florida Statutes (1987), authorizes the admission of:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness.
[5] The standard of proof in cases such as this requires the state to establish by clear and convincing evidence that the food stamp recipient committed, and intended to commit, an intentional program violation. 7 C.F.R. § 273.16(e)(6) (1988) (emphasis added).