# Supreme Court of Florida

————————

No. SC18-357

————————

**CYNTHIA L. JACKSON, et al.,**
Petitioners,

vs.

**HOUSEHOLD FINANCE CORPORATION III, et al.,**
Respondents.

July 2, 2020

LAWSON, J.

This case is before the Court for review of the decision of the Second District Court of Appeal in *Jackson v. Household Finance Corp. III*, 236 So. 3d 1170 (Fla. 2d DCA 2018). The district court certified that its decision directly conflicts with *Maslak v. Wells Fargo Bank, N.A.*, 190 So. 3d 656 (Fla. 4th DCA 2016), on the same question of law, giving us jurisdiction. *See* art. V, § 3(b)(4), Fla. Const. For the reasons explained below, we approve *Jackson*, disapprove *Maslak*, and hold that the proper predicate for admission of records into evidence under the business records exception to the hearsay rule can be laid by a qualified witness testifying to the foundational elements of the exception, as held by the Second District. *Jackson*, 236 So. 3d at 1175.

# BACKGROUND

On April 25, 2006, Cynthia Jackson executed a loan agreement to obtain a residential loan in the amount of $146,841.79 from Household Finance Corp III (HFC).[1] Jackson and her husband (Petitioners) also executed a mortgage for the same amount with HFC. The Second District explained:

> Household Finance Corp III is the originating lender and the plaintiff below. In 2002, well before the Jacksons executed the mortgage, Household was purchased by HSBC Holdings and became a wholly-owned subsidiary of HSBC.

*Id.* at 1172.

On June 23, 2014, HFC filed a foreclosure complaint against Petitioners and other defendants, alleging that Petitioners defaulted under the terms of the note and the mortgage. Petitioners did not challenge the default.

At the bench trial, HFC called a twenty-five-year employee of HSBC, Assistant Vice President David Birsh, to establish the foundation for admission of records under the business records exception to the hearsay rule. Counsel for HFC asked Birsh if he has "access to the records maintained by HSBC with respect to

---

1. The mortgagee's name is designated in some parts of the record as "Household Finance Corporation III" and in other parts as "Household Finance Corp III." Petitioners did not challenge HFC's standing to foreclose on any basis, including this discrepancy.

the mortgage loan account which is the subject of this instant action," to which he answered, "Yes, I do." Counsel then asked Birsh the following questions:

Q. So are you familiar with the business practice of HSBC?

A. Yes, I am.

Q. And is it the regular business practice of HSBC to record acts, transactions, payments, communications, escrow account activity disbursements, events and analysis with respect to the mortgage loan account?

A. Yes, it is.

Q. And are these business records prepared by persons with knowledge of or from information transmitted by persons with knowledge of the acts, transactions, payments, communications, escrow account activity, disbursements and analyses?

A. Yes.

Q. And are all records made at or near the time the acts, transactions, payments, communications, escrow account activity, disbursements, events and analyses occur?

A. Yes.

. . . .

Q. And are these records maintained by HSBC in the ordinary course of its regular business activity of the mortgage, lending, banking and service activity?

A. Yes, they are[.]

Q. Did HSBC prepare and maintain these records with respect to the subject loan?

A. Yes.

- 3 -

Counsel then moved the documents, including the original note, mortgage, and loan payment history, into evidence. Counsel for Petitioners objected on grounds of "hearsay," explaining that Birsh had not "laid a foundation upon which to testify as to these as business records or to authenticate any of these documents based on personal knowledge." The trial judge overruled the objection and admitted the records into evidence.[2]

HFC rested its case, and counsel for Petitioners did not introduce any evidence. The trial court entered final judgment of mortgage foreclosure in favor

___

2. In addition to challenging the foundation laid for the business records exception to the hearsay rule set forth in section 90.803(6)(a), Florida Statutes (2014), counsel for Petitioner also objected that Birsh did not properly "authenticate any of these documents," which we read as an objection based upon section 90.901, Florida Statutes (2014) ("Authentication or identification of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). As is typically the case with any custodian of business records, Birsh was required to both authenticate the documents and lay a foundation for their admission as business records. *See* Charles W. Ehrhardt, *Florida Evidence*, § 901.1, at 1288-89 (2019 ed.) (explaining that authentication of an item of evidence does not make it "automatically admissible" and that "after a document has been authenticated," a witness must then "lay the foundation for the admission of a document under a hearsay exception"). However, all of Petitioner's arguments on appeal relate to the hearsay objection, thereby waiving any argument that the documents were not properly authenticated under section 90.901. *See Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (stating that the failure to fully brief and argue points on appeal "constitutes a waiver of these claims").

of HFC, and the Second District affirmed the judgment. *Jackson*, 236 So. 3d at 1171.

## ANALYSIS

We review a trial court's decision to admit evidence for an abuse of discretion. *Tundidor v. State*, 221 So. 3d 587, 598 (Fla. 2017). "However, the question of whether a statement is hearsay is a matter of law and is subject to de novo review on appeal." *Id.* at 598-99 (quoting *Cannon v. State*, 180 So. 3d 1023, 1037 (Fla. 2015)).

Florida's Evidence Code sets forth the general rule that "hearsay" is not admissible except as provided by statute, § 90.802, Fla. Stat. (2014), and defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," § 90.801(1)(c), Fla. Stat. (2014). The Evidence Code defines some categories of evidence as non-hearsay, and therefore generally admissible, *see* § 90.801(2), Fla. Stat. (2014), and also lists a number of "exceptions," which constitute categories of admissible hearsay, *see* §§ 90.803(1)-(24), 90.804(1)-(2), Fla. Stat. (2014). The business records exception to the hearsay rule provides for the admission of "records of regularly conducted business activity" as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business

activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

§ 90.803(6)(a). As explained by the Second District,

A party can lay a foundation for the [admission of documents pursuant to the] business records exception in three ways: (1) offering testimony of a records custodian, (2) presenting a certification or declaration that each of the elements has been satisfied, or (3) obtaining a stipulation of admissibility. *Yisrael v. State*, 993 So. 2d 952, 956-57 (Fla. 2008).

*Jackson*, 236 So. 3d at 1172 (footnote omitted).

This case obviously involves the first method—testimony at trial of a records custodian. With respect to this method, the Second District explained,

If the party offers the testimony of a records custodian to lay the foundation, it is not necessary that the testifying witness be the person who created the business records. *Channell* [*v. Deutsche Bank Nat'l Tr. Co.*], 173 So. 3d [1017,] 1019 [(Fla. 2d DCA 2015)]; *Specialty Linings, Inc. v. B.F. Goodrich Co.*, 532 So. 2d 1121, 1121 (Fla. 2d DCA 1988). The witness may be any qualified person with knowledge of each of the elements. *Channell*, 173 So. 3d at 1019; *Specialty Linings*, 532 So. 2d at 1121.

*Id.*; *see also* Charles W. Ehrhardt, *Florida Evidence* § 803.6, at 1109-10 (2019 ed.) (A witness must be able to "show that each of the foundation requirements is present," but "[i]t is not necessary to call the person who observed the matter

- 6 -

recorded or actually made the entry."). A qualified witness, therefore, is anyone

with personal knowledge of the organization's regular business practices relating

to creating and retaining the record(s) at issue. *Id.* § 803.6, at 1111. This

knowledge will necessarily come from the witness's training or experience, or,

most likely, a combination of both.[3] The foundation requirements are:

> (1) that the record was made at or near the time of the event, (2) that it was made by or from information transmitted by a person with knowledge, (3) that it was kept in the ordinary course of a regularly conducted business activity, and (4) that it was a regular practice of that business to make such a record.

*Jackson*, 236 So. 3d at 1172 (quoting *Channell*, 173 So. 3d at 1019).

---

3. The "level of training or amount of experience necessary . . . depends wholly on the subject of the testimony." *Bell v. State*, 179 So. 3d 349, 357 (Fla. 5th DCA 2015). Even with respect to expert testimony, oftentimes, the amount of training or experience required is minimal. *See id.* (explaining that, in the context of the typical probation officer field test testimony, "very little" training or experience is necessary "before a person can reliably interpret . . . preliminary drug tests" and that "any person with the minimal training, experience, or both, needed to understand these tests and how to read and explain their results would qualify to testify to the results under section 90.702, Florida Statutes"). Likewise, we generally observe that it should not take a new bank employee hired for an entry-level position much time or training to become familiar with how the bank records and keeps track of monetary transactions—a core function basic to the operation of any financial institution. Because making and keeping records of loan and deposit account transactions is the quintessential banking activity, it hardly seems possible that someone could work in and then manage multiple departments at a bank over a twenty-five-year period without learning how the bank makes a record of the loan payments that it receives.

Here, the proponent presented the testimony of a twenty-five-year employee and executive vice president who testified that he was "familiar with the business practices of the company" and that it was the company's "regular business practice" to "record acts, transactions, payments, communications, escrow account activity, disbursements, events and analysis with respect to the mortgage loan account." He further testified that the documents met each of the other foundational requirements set forth in section 90.803(6), using the language of the statute or a close approximation of it, as detailed above. No additional foundation is required by the statute or by any case from this Court, and we reject the notion that the witness must also detail the basis for his or her familiarity with the relevant business practices of the company or give additional details about those practices as part of the initial foundation because this would be inconsistent with the plain language of the statute. *See Greenfield v. Daniels*, 51 So. 3d 421, 425 (Fla. 2010) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984))).

Rather, once the proponent lays the predicate for admission of documents set forth in the statute and reflected in our case law, "the burden shifts to the opposing party to prove that the records are untrustworthy," *Jackson*, 236 So. 3d at 1172

(citing *Love v. Garcia*, 634 So. 2d 158, 160 (Fla. 1994)), or that they should not be admitted for some other reason. This would necessarily need to be done prior to admission of the documents into evidence—so that the opponent can timely raise a proper objection to admission of the documents—and could include questioning of the witness as to the basis for his or her knowledge of the company's business practices.

In this case, the opponent waited until after the documents were admitted to question the witness about the basis for his knowledge. Even then, although the witness's answer does not inspire confidence in his preparation for the opponent's question, neither does it reveal any disqualifying deficiency in his relevant knowledge. Birsh explained that during his twenty-five years with the company he had "been in the various departments" and "managed various departments" such that he had "basically become really familiar with a lot of the different questions." He also mentioned "cross-training and what have you." Additionally, on cross-examination, Birsh testified that he first became familiar with the Jackson file and documents "a couple of months ago." Birsh explained that "upon [his] review of the documents," he personally "went into [HSBC's] imaging system and reviewed those documents and compared them to the ones that were printed today." Birsh stated that "they have not been changed," and that "[t]hey are the same that have been imaged in our system from the beginning." These responses demonstrate a

working knowledge of HSBC's relevant record-keeping practices and system. The opponent accepted Birsh's responses and did not press the witness for further details about the basis for his knowledge of his company's relevant business practices.

We also note that the opponent did not question Birsh's assertion that the documents were HSBC records. Although one might expect related companies to have independent business practices and separate record-keeping systems, Birsh's uncontradicted testimony was that the documents were maintained by HSBC as HSBC business records. And, the documents relating to the Jackson loan are consistent with this testimony. For example, a screenshot of the computerized account record relating to Jackson's loan has a prominent HSBC logo at the top and, under the HSBC logo, reads "HFC & Beneficial Members HSBC." Additionally, copies of correspondence to Jackson from HFC include a prominent "HFC" logo that includes "Member HSBC Group" as part of that logo.

Because Birsh testified to his familiarity with the business practices of his company and to each foundational requirement, we agree with the trial judge and the Second District that Birsh's testimony was "sufficient to satisfy [HFC's] initial burden to lay the predicate for the business records exception." *Jackson*, 236 So. 3d at 1175; *see also United States v. Langford*, 647 F. 3d 1309, 1327 (11th Cir. 2011) (finding a proper foundation laid for the admission of business records

where the records custodian testified that "she had personal knowledge of the process involved in gathering the documents, that the documents had been gathered from ongoing businesses at the bank, that the documents were not made in response to a subpoena, and that the documents were part of, or appeared to be part of, documents routinely held in the normal course of business"); *United States v. Atchley*, 699 F. 2d 1055, 1058 (11th Cir. 1983) (finding a proper foundation laid for the admission of business records where the records custodian testified that the records "were kept in the ordinary course of business, that it was the ordinary course of her business to make and keep such records, [and] that the records were made on or about the time of the transactions reflected in the records").

By contrast, the Fourth District in *Maslak* held that despite a bank employee's testimony describing her job duties and familiarity with the bank's loan servicing practices, she "was not qualified to lay a foundation for [the] admission" of the loan servicing documents moved into evidence. 190 So. 3d at 658. *Maslak* does not elaborate on what deficiency it found with respect to the witness's qualification to lay the foundation for admission of the documents, and we find her testimony to be sufficient, as a matter of law, to demonstrate her qualification to testify as a records custodian, and to shift the burden to the opponent to establish otherwise. Additionally, the Fourth District held that despite the witness's testimony that the proffered documents met all prerequisites for

- 11 -

admission under section 90.803(6), the foundation was lacking because the witness did not testify as to specific details of the bank's "procedures for inputting payment information into their systems and how the payment history was produced." *Id.* at 659. Again, we disagree and hold that a qualified witness who has "testified as to each element of the business records exception for the admission of" a business record, *id.*, has laid the proper predicate for admission of the document such that the document should be admitted unless the opponent establishes it to be untrustworthy, *Love*, 634 So. 2d at 160; *Jackson*, 236 So. 3d at 1172. This is why the Second District disagreed with *Maslak*, and why we disapprove it.

The dissent argues that we are "tak[ing] away the records proponent's burden to lay a proper foundation for admission" of business records. Dissenting op. at 38. Our ruling in this case does not subtract from that burden, which is set by the plain words of the statute. A contrary ruling would, indeed, add to the burden by requiring "factual specificity . . . [as to] how the records were compiled, maintained, or utilized." *Id*. at 28. The statute does not require this detail, and we see no reason why it should be required as part of the proponent's prima facie case. The dissent seems to be arguing that in the absence of testimony explaining details of a company's relevant record-keeping practices, a records custodian cannot "demonstrat[e] his personal knowledge" of the company's record-keeping policies and procedures. *Id*. This lack of detail seems to be the basis for the dissent's

conclusion that Birsh's testimony did "not demonstrate that [he] had any personal knowledge or actual familiarity with the business practices regarding HFC III's mortgage loan accounts." *Id.* However, after Birsh testified to his years of experience with the bank, he then testified that he was familiar with the company's business practices. That testimony is direct evidence that Birsh was familiar with the relevant business practices, including how the bank records and tracks monetary transactions, and was sufficient to make a prima facie showing that Birsh was qualified to give the testimony that followed, authenticating the documents and laying the foundation for their admission as business records pursuant to the express requirements of section 90.803(6)(a).

The dissent also wrongly relies on Ehrhardt's *Florida Evidence* to support its argument that our opinion changes Florida law by creating "a special rule for foreclosure actions." Dissenting op. at 41 & n.8 (quoting Ehrhardt, *Florida Evidence* § 803.6, at 1113-14, for the proposition that "[s]ome District Courts of Appeal have expanded the records admissible under 90.803(6) in mortgage foreclosure cases" where "multiple companies [are] involved in servicing an individual loan as a result of a loan portfolio being sold or acquired by another entity").

Unlike the cases Ehrhardt references, however, this case does not involve records from a prior servicer. Although the dissent does argue that because Birsh

worked for HSBC, and not HFC, he was not qualified to lay a foundation for the records admitted into evidence (claiming that there "certainly was no connection established between HFC III and HSBC"), dissenting op. at 30-31, this assertion is incorrect. Birsh testified that HSBC acquired HFC prior to origination of the loan at issue and that the records "with respect to the mortgage loan account which is the subject of this instant action" were "maintained by HSBC." This testimony was uncontradicted.

Finally, we address the Fourth District's articulated justification for concluding that a qualified witness must do more than testify to each foundational element set forth in section 90.803(6) to satisfy the proponent's initial burden of demonstrating admissibility under the business records exception. The Fourth District stated that the witness's "parroting" of the statutory elements of the business records exception was inadequate, *Maslak*, 190 So. 3d at 660, because holding otherwise would transform Florida's business records exception into a "magic words" test contrary to the Fourth District's case law. *Id.* at 659. The Fourth District does not explain why more should be required, and we will explain why a minimal testimonial foundation is both appropriate in this context and desirable in terms of fairness and the efficient administration of justice.

First, it is important to consider that what the Fourth District impugns as "magic words" is the clear-cut foundation that we have said a party must make to secure admission of a business record:

> To secure admissibility under [Florida's business-records] exception, the proponent must show that (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.

*Yisrael v. State*, 993 So. 2d 952, 956 (Fla. 2008). It would be odd if a party could not make this required showing with straightforward testimony that each of the criteria is met. Because the records custodian testimony is relevant only to the collateral issue of essentially authenticating relevant documents, there is no reason to prolong a trial and clutter a record with irrelevant details of those practices and procedures. To do so would add unnecessary inefficiency into the process.

Second, it is important to understand the objectives and policy issues surrounding evidentiary requirements for the authentication and admission of a document by its proponent. "Evidence is authenticated when prima facie evidence is introduced to prove that the proffered evidence is what its proponent claims." Ehrhardt, *Florida Evidence* § 901.1, at 1287. In this context, a party calls a records custodian to authenticate the documents needed to prove its allegations and to lay a foundation confirming that the proffered documents are in fact business records. The word "confirming" is appropriate because documents proffered at trial are

- 15 -

what they purport to be "in 99 out of 100 cases." 2 *McCormick on Evidence* § 221 (7th ed. 2013).[4] As explained in *McCormick*, the "principal justification" for imposing authentication requirements in the rules of evidence is to create "a necessary check on the perpetration of fraud." *Id.* *McCormick* notes that "requiring proof of what may be correctly assumed in 99 out of 100 cases is at best time-consuming and expensive." *Id.* *McCormick* also notes that although "[t]raditional requirements of authentication admittedly furnish some guarantee against fraudulent or mistaken attribution of a writing. . . . it has frequently been questioned whether this benefit is not outweighed by the time, expense, and occasional untoward results entailed by the traditional skeptical attitude toward authenticity of writings." *Id.* § 221 (7th ed. Supp. 2016). Courts have historically attempted to ameliorate the time and expense required to prove this particular collateral matter (that is almost always self-evident and true) by making it simple to do. *See, e.g.*, *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 328

---

4. The dissent argues that our opinion makes "the mistake of conflating the evidentiary concepts of authentication and admissibility" and that "this fundamental legal error is at the root of the majority's erroneous decision in this case." Dissenting op. at 36. We are not confused. We understand that a party seeking to admit a document as a business record must both authenticate the document and lay a proper "foundation" for admission with evidence demonstrating that the document meets the criteria for admission as a business record. Our point here is that these tasks are both related and similar in purpose, and that the same policy considerations apply equally to both evidentiary requirements.

(3d Cir. 2005) ("We have repeatedly noted that '[t]he burden of proof for authentication is slight.' ") (quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985)). Again, this is consistent with the efficient administration of justice. The company's record-keeping practices are not on trial or otherwise relevant to any issue framed by the pleadings. Adding complexity to the foundation requirement in this context, as the Fourth District did, is inconsistent with the appropriate objective of making litigation as simple and sensible as reasonably possible.

Examining the payment history in a mortgage foreclosure case, such as this one, is illustrative. We know that every commercial lender will necessarily have a "regular practice" of making a record of payments and will necessarily keep that record "in the ordinary course of business." That record of payments will also of necessity be "made at or near the time" that the payment is received by a "person with knowledge" of the payment amount and date of receipt. In other words, it is *extraordinarily* unlikely in any mortgage foreclosure case that records meeting the business records exception to the hearsay rule will not exist or that the proffered records are not exactly what they purport to be. In this case, as in most, the debtor does not even dispute the accuracy of the payment history as reflected in the records admitted. Rather, she simply argues for reversal on the theory that her lender should have been required to prove additional collateral facts before it could

introduce records to establish material facts that she does not contest. We should not impose that additional burden on litigants. Of course, a litigant is free to contest the genuineness of the documents, as business records or otherwise, if he or she has a basis to do so. This would be true irrespective of the quantum of detail we require as part of the threshold showing to establish a document as a business record—meaning that requiring the showing detailed in the plain language of the statute, and not more, will in no way prejudice any party that has a legitimate basis to challenge admissibility of the document in question.

## CONCLUSION

For the foregoing reasons, we resolve the certified conflict by holding that the testimony of a qualified witness confirming the presence of each foundation requirement of the business records exception constitutes a sufficient predicate for the admission of records under this exception to the hearsay rule. Accordingly, we approve the Second District's decision and disapprove the Fourth District's decision.

It is so ordered.

CANADY, C.J., and MUÑIZ and COURIEL, JJ., concur.
POLSTON, J., dissents with an opinion, in which LABARGA, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., dissenting.

I agree with the Jacksons' evidentiary objection that the records proponent's witness in this case failed to lay "a foundation upon which to testify as to these as business records." Only records identified as from HSBC[5] were admitted under the business records exception to the hearsay rule, and none from the plaintiff, Household Finance Corporation III. Moreover, the records proponent's witness, who was an employee of HSBC, made only general statements parroting the statutory elements of the business records exception without any identified basis of how the records were generated, what they were used for, or how they were maintained. And there was no connection established between the plaintiff and HSBC. As a result, the witness did not demonstrate personal knowledge of the records at issue or personal knowledge sufficient to affirm the statutory elements of the business records exception. Therefore, I respectfully dissent from the majority's decision, which transforms Florida's business records exception into a magic-words test only requiring the recitation of the statute.

## I. BACKGROUND

At the bench trial in this mortgage foreclosure case, the originating lender and plaintiff, Household Finance Corporation III (HFC III), sought to admit several

---

5. "HSBC" was identified in the admitted records as HSBC Holdings, PLC.

documents related to the mortgage account pursuant to the business records exception, section 90.803(6), Florida Statutes. Specifically, the documents in HFC III's composite exhibit were identified as records maintained by HSBC, including the following: a merger announcement from 2002 indicating that HSBC Holdings, PLC, planned to acquire Household International, Inc., by the first quarter of 2003, which was printed from the Securities and Exchange Commission (SEC) Edgar website in 2015; the loan agreement listing HFC III as the lender and Cynthia Jackson as the borrower; the mortgage executed by Petitioners listing HFC III as the mortgagee; a printout of Petitioners' loan payment history with an "HFC Member HSBC Group" logo; snapshots from HSBC's computer database; breach letters sent to Petitioners from HFC III with an "HFC Member HSBC Group" logo in the right hand corner; and a screenshot reflecting when the breach letters were sent with no indication of what entity generated the screenshot.

HFC III offered the testimony of one witness, David Birsh,[6] an employee of HSBC, to lay the foundation for the admission of the documents as business records. Birsh stated that he was an Assistant Vice President at HSBC, was familiar with HSBC's business practices, and had access to the Jacksons' mortgage loan account. Then, in response to HFC III counsel's recitation of the elements of

---

6. The witness' name was spelled phonetically by the court reporter.

the business records exception, Birsh responded that "yes" each of the statutory requirements was met. Birsh testified that "yes" he was familiar with HSBC's business practices, "yes" these records are prepared by people with knowledge, "yes" the records are made near the time of the acts, "yes" the records are maintained by HSBC in the ordinary course of its business, and "yes" HSBC prepared and maintained these records.

Counsel for HFC III then moved to admit the records into evidence. The Jacksons' counsel objected that the records were hearsay and that Birsh "hasn't laid a foundation upon which to testify as to these as business records or to authenticate any of these documents based on personal knowledge."[7] The trial judge overruled the Jacksons' objection and admitted the documents.

---

7. The Jacksons were not required to raise multiple, repeated, or more explanatory objections to the admission of the documents under the business records exception to the hearsay rule based upon the failure to lay a proper foundation. *See, e.g.*, *Carter v. State,* 951 So. 2d 939, 943 (Fla. 4th DCA 2007) ("[W]hen the state moved the police report/affidavit into evidence under the business records hearsay exception, appellant objected on relevancy, hearsay, and foundation grounds. He makes the same argument on appeal that the document should not have come in as a business record; that it was hearsay. Thus, appellant's hearsay objection was sufficient to preserve for appellate review his arguments regarding admission of the police report/affidavit."); *Richardson v. State*, 875 So. 2d 673, 676 (Fla. 1st DCA 2004) ("Appellant correctly cites *Andrews v. State*, 261 So. 2d 497 (Fla. 1972), for the proposition that an objection to a question on hearsay grounds is sufficient to preserve for appellate review the failure of the proponent of the testimony to lay a proper predicate [for admission under the business records exception].").

On cross-examination, the Jacksons' counsel asked Birsh when he became familiar with the file, and he replied that the first time was "a couple of months ago." Birsh explained that he "went into our imaging system and reviewed those documents and compared them to the ones that were printed today, and they have not changed. They are the same that have been imaged in our system from the beginning." He then testified as follows:

> Q. And you testified that you're familiar and I forget the exact language, with the recordkeeping procedures of HSBC. How did you gain that familiarity?
> A. Well, I've been there for 25 years. So I've been in the various departments, managed various departments. So I've basically become really familiar with a lot of the different questions. Like cross-training and what have you.

## II. ANALYSIS

The Florida Evidence Code provides that hearsay is inadmissible except as provided by statute. *See* § 90.802, Fla. Stat. (2014). Section 90.801, Florida Statutes (2014), defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." And the business records exception to the hearsay rule

---

And to be clear, I address the validity of the Jacksons' hearsay objection in this dissent, not the validity of the Jacksons' authentication objection that was not pursued on appeal.

provides for the admission of "records of regularly conducted business activity" as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all *as shown by the testimony of the custodian or other qualified witness*, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

§ 90.803(6)(a), Fla. Stat. (2014) (emphasis added). "The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records." *Bank of New York v. Calloway*, 157 So. 3d 1064, 1070 (Fla. 4th DCA 2015) (quoting *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995)).

To lay a proper foundation for the admission of business records, the proponent must show that "(1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record." *Yisrael v. State*, 993 So. 2d 952, 956 (Fla. 2008). The records proponent

can present that information in one of three ways: (1) provide a witness—either the records custodian or other qualified witness—to testify under oath at trial to the statutory requirements; (2) present a certification or declaration from the records custodian or other qualified person that complies with sections 90.803(6)(c) and 90.902(11), Florida Statutes; or (3) stipulate with the opposing party to the admissibility of the documents as business records. *Id.* at 956-57. This case involves the first method.

When using witness testimony to lay the foundation for the admission of business records,

> it is necessary to call a witness who can show that each of the foundational requirements set out in the statute is present. It is not necessary to call the person who actually prepared the document.

*Twilegar v. State*, 42 So. 3d 177, 199 (Fla. 2010) (quoting *Forester v. Norman Roger, Jewell & Brooks Int'l, Inc.*, 610 So. 2d 1369, 1373 (Fla. 1st DCA 1992)); *see also* Charles W. Ehrhardt, *Florida Evidence* § 803.6, at 1109-10 (2019 ed.) (A witness must be able to "show that each of the foundation requirements is present," but "[i]t is not necessary to call the person who observed the matter recorded or actually made the entry.").

Importantly, such a witness must have requisite knowledge of the business procedures used to make the record. *See Twilegar*, 42 So. 3d at 199 ("The records custodian or any qualified witness who has the necessary knowledge to testify as to

how the record was made can lay the necessary foundation." (quoting *Forester*, 610 So. 2d at 1373); *Hunter v. Aurora Loan Servs.*, *LLC*, 137 So. 3d 570, 573 (Fla. 1st DCA 2014) (finding testimony from witness insufficient to lay the proper foundation when the witness lacked "personal knowledge" of the record-keeping procedures).

Professor Charles Ehrhardt has explained that the witness must have "personal knowledge" of how a business record was made. Ehrhardt, *Florida Evidence* § 803.6, at 1111. Specifically, Professor Ehrhardt states that "[s]ection 90.803(6)(a) provides that a custodian or otherwise qualified witness who has *personal knowledge* of the method employed by the business establishes that each of the foundation requirements is present with respect to the record can lay the foundation for the admission of the record." *Id.* at 1110-11 (emphasis added).

Stated otherwise, "a qualified person to introduce business records, other than the records custodian, must be a person, who by the very nature of that person's job responsibilities and training, knows and understands the records sought to be introduced." *Lassonde v. State*, 112 So. 3d 660, 663 (Fla. 4th DCA 2013). When the business records sought to be admitted are "in the form of computer or electronic records, such as a computerized loan transaction history, the foundational witness ought to possess knowledge of the record-keeping system." *Channell v. Deutsche Bank Nat'l Tr. Co.*, 173 So. 3d 1017, 1019 (Fla. 2d DCA

2015); *see also Specialty Linings, Inc. v. B.F. Goodrich Co.*, 532 So. 2d 1121, 1121 (Fla. 2d DCA 1988).  Further, "[i]n the context of a foreclosure action, a representative of a loan servicer testifying at trial . . . must be familiar with and have knowledge of how the 'company's data [is] produced,' " *Sanchez v. Suntrust Bank*, 179 So. 3d 538, 541 (Fla. 4th DCA 2015) (second alteration in original) (quoting *Glarum v. LaSalle Nat'l Ass'n*, 83 So. 3d 780, 783 (Fla. 4th DCA 2011)), and be "familiar with the bank's record-keeping system and [have] knowledge of how the data was uploaded into the system," *id.* (quoting *Weisenberg v. Deutsche Bank Nat'l Tr. Co.*, 89 So. 3d 1111, 1112-13 (Fla. 4th DCA 2012)).

If the records proponent does not lay the proper foundation, the records are not admissible under section 90.803(6).  *Yisrael*, 993 So. 2d at 956 ("[T]he evidentiary proponent . . . ha[s] the burden of supplying a proper predicate to admit this evidence under an exception to the rule against hearsay."); *Caldwell v. State*, 137 So. 3d 590, 591-92 (Fla. 4th DCA 2014) (holding evidence inadmissible under section 90.803(6) when the State failed to lay the proper foundation); Ehrhardt, *Florida Evidence* § 803.6, at 1111-12 ("If a party does not lay the necessary foundation, the document is not admissible under section 90.803(6).").  However, if (and only if) the records proponent lays the necessary foundation for the admissibility of business records, the burden shifts to the opposing party to show their untrustworthiness.  *Love v. Garcia*, 634 So. 2d 158, 160 (Fla. 1994) ("Once

this predicate is laid, the burden is on the party opposing the introduction to prove the untrustworthiness of the records.  If the opposing party is unable to carry this burden, then the record will be allowed into evidence as a business record."); *see also* Ehrhardt, *Florida Evidence* § 803.6, at 1109 ("If the trial court finds pursuant to 90.105 that each [of] the [foundational] requirements has been proven by a preponderance of the evidence, then the burden shifts to the opposing party to show the lack of trustworthiness of the record.").

Additionally, this Court has made clear that evidence admitted under an exception to the hearsay rule "must be offered in *strict* compliance with the requirements of the particular exception."  *Yisrael*, 993 So. 2d at 957 (quoting *Johnson v. Dep't of Health & Rehab. Servs.*, 546 So. 2d 741, 743 (Fla. 1st DCA 1989)).

Here, Birsh testified that he was an Assistant Vice President of HSBC and that he had "access to the records maintained by HSBC with respect to the mortgage loan account which is the subject of this instant action."  He then said "yes" as HFC III's counsel recited the statutory elements of the business records exception.  On cross-examination, Birsh testified that he had "been there for 25 years" and "in the various departments, managed the various departments" and that he first became familiar with the file "a couple of months ago."

However, this testimony does not demonstrate that Birsh had any personal knowledge or actual familiarity with the business practices regarding HFC III's mortgage loan accounts or personal knowledge of the method employed to make the records at issue. He only testified that the printed documents were the same as what the HSBC computer system showed. This testimony, his job title, and length of employment do not provide any details regarding his training or experience that could possibly demonstrate that he knew how the records were prepared and maintained. In addition, Birsh's agreement with HFC III's counsel's recitation of the statutory elements of the business records exception lacked any factual specificity demonstrating his personal knowledge of how the records were compiled, maintained, or utilized.

In other words, "the witness simply 'regurgitated the magic words,' but was unfamiliar with, and had no knowledge of, how the records were created and kept." *Maslak v. Wells Fargo Bank, N.A.*, 190 So. 3d 656, 659 (Fla. 4th DCA 2016). "What is missing here is testimony about [the] procedures for inputting payment information into their systems and how the payment history was produced." *Id.* "[Birsh] failed to testify about how payments were received and processed, [the] procedures for inputting payment information, or the computer system [utilized]." *Id.* at 660; *see also Miller v. Bank of America, N.A.*, 201 So. 3d 1286, 1288 (Fla. 5th DCA 2016) (holding that the witness had not laid the proper foundation, even

though she gave "affirmative answers to the business record foundation questions," because her testimony "was not based on personal knowledge"); *Sanchez*, 179 So. 3d at 541 (holding that the witness did not have "sufficient knowledge to lay the foundation for the admission of the screenshot into evidence" because the witness "did not know anything about the process by which [the records] were created").

The majority belittles the complexity of banking records and assumes it would be easy for any "new bank employee hired for an entry-level position" to learn a banking system since keeping track of transactions is "the core function . . . of any financial institution"; therefore, a 25-year employee would obviously know the ins and outs of all of the banking records. Majority op. at 7 n.3. The majority is ill informed. Just because someone works at a bank for 25 years does not demonstrate that the employee knows the correct documentation that a particular entity uses for specific information or how a system works. Different banks use different types of records that are processed differently and are shown in different ways. That is a lot of difference. There is no dispute that Birsh could learn the system at least as quickly as a new banking employee, but there was no evidence to demonstrate he had yet done so.

Moreover, a parent relationship of HSBC to HFC III was not established. The majority quotes the Second District's decision when stating that the parent relationship exists, but nowhere in the record was such a relationship established.

- 29 -

The document improperly introduced into evidence under the business records exception does not do that as it is simply a merger announcement from 2002 indicating that HSBC Holdings, PLC, was planning to acquire Household International, Inc., by the first quarter of 2003. The merger announcement mentions that Household International, Inc., is the parent company of Household Financial Corporation, but Household Financial Corporation is a different legal entity and business than the plaintiff here, Household Financial Corporation III. When introducing the merger announcement, counsel for HFC III asked Birsh to identify it, and Birsh stated that "[t]his is the merger announcement which indicates that HSBC merged – purchased Household Finance Corporation III" and answered in the affirmative that the agreement is maintained as part of HSBC's business records. But, it bears repeating, the announcement actually discussed an anticipated merger between HSBC and Household International (the parent of Household Financial Corporation), not one that had already taken place between HSBC and the plaintiff in this case, Household Financial Corporation III (HFC III). In fact, the merger announcement, which appears to have been filed with and maintained by the SEC, does not mention HFC III at all. The majority, the Second District, and HFC III appear to be merely relying on the fact that HFC and HFC III have similar names; but they are different legal entities with no connection established between them in this record. There certainly was no connection

- 30 -

established between HFC III and HSBC, the company that was at some point contemplating the purchase of the similarly named Household International. And no servicing agreement was mentioned or produced. Without an established connection between the two entities, Birsh's testimony that he personally "went into [HSBC's] imaging system" could not possibly demonstrate any personal knowledge regarding HFC III's loan documents or HFC III's record-keeping system. Further, a comparison of what is on a computer screen to a printout to see if there were any changes is certainly not a demonstration of working knowledge of business record practices and systems. Someone totally unfamiliar with any business records from anywhere could do that. That is not sufficient under the statute to admit hearsay documents.

To summarize, in this case, there were general statements that are a recitation of the statute without any identified basis of how the business records at issue were generated, what they were used for, or how they were maintained. These general statements were from an employee of HSBC, a different company than the plaintiff, who identified the records as records of HSBC even though some of the records only have the plaintiff's name on them, and no connection was established between HSBC and the plaintiff. These general statements do not demonstrate that the employee of HSBC had sufficient personal knowledge to affirm the statutory elements of the business records exception with respect to the

records relating to HFC III's loan. Accordingly, HFC III failed to meet its burden of laying a proper foundation for the admission of the records relating to its loan. The burden never shifted to the Jacksons to prove the untrustworthiness of the records, and the trial court erred in admitting the documents without a proper foundation. *Cf. CitiMortgage, Inc. v. Hoskinson*, 200 So. 3d 191, 192 (Fla. 5th DCA 2016) (holding that a witness was qualified to lay the foundation for a letter as a business record because she testified as to when and how the letters were created and mailed and that she had "trained side-by-side with someone in that department and had observed the entire process"); *Wells Fargo Bank, N.A. v. Balkissoon*, 183 So. 3d 1272, 1276-77 (Fla. 4th DCA 2016) (holding that proper foundation was laid because the witness "demonstrated he had personal knowledge concerning the accuracy of Bank of America's records," and he testified that "[t]he AS400 system contains basic loan information, including the payment history, escrow information, and property address[, that] Bank of America applies payments it receives to the interest and principal on the loan and then to tax and insurance[, and that t]he payment center records the allocation of funds in the AS400 system"); *Lindsey v. Cadence Bank, N.A.*, 135 So. 3d 1164, 1168 (Fla. 1st DCA 2014) (holding that an assistant vice president had sufficient understanding to lay the foundation for the admission of computer printouts as business records because she explained that the computer loan processing system automatically

creates account balances, that the bank's loan processing employees enter each received payment into the system, that loan payments are entered into the system when the transaction happens, and that loan records are updated within a day); *Cooper v. State*, 45 So. 3d 490, 492-93 (Fla. 4th DCA 2010) (holding that trial court did not err in admitting records as the witness had "training and experience" in records processing, customer support, billing, and data servicing and testified how the business maintained and prepared its records); *see also Noble v. Ala. Dep't of Envtl. Mgmt.*, 872 F.2d 361, 366-67 (11th Cir. 1989) (requiring a foundational witness to give testimony "that he had personal knowledge of the circumstances under which the [records] were prepared" rather than "simply testif[ying] that he had seen the letter before and that it was prepared in the 'ordinary course' of ADEM's business"); *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1042-45 (9th Cir. 2009) (holding that the claims manager laid the proper foundation because the witness explained the details of how employees input records of payments into the database, explained how the database was queried, testified about the computer used to compile and search records, and detailed how the summaries matched with the "backup documentation"); *United States v. Jenkins*, 345 F.3d 928, 934-36 (6th Cir. 2003) (determining that a U.S. Postal Inspector laid the proper foundation for admission of mailing labels because he "testified that he was familiar with these labels through his training and experience

and that he commonly dealt with these records"); *Lorraine v. Market Am. Ins. Co.*, 241 F.R.D. 534, 545-46 (D. Md. 2007) ("It is necessary, however, that the [foundational] witness provide factual specificity about the process by which the electronically stored information is created, acquired, maintained, and preserved without alteration or change, or the process by which it is produced if the result of a system or process that does so, as opposed to boilerplate, conclusory statements that simply parrot the elements of the business record exception to the hearsay rule . . . .").

The majority complains about the Fourth District's description of "magic words." When I refer to the majority only requiring a recitation of the statutory elements as a magic-words test, it is because the recitation serves as a mere illusion, meaning that simply saying the words is intended to make something appear to be present when it is not. It makes it appear that the records proponent has actually proven what the statute requires even though the witness has only repeated the words of the statute. Unfortunately, the majority's holding only involves saying the statutory elements without concern over what the response is, who is giving it, and whether the records custodian or person testifying actually has personal knowledge sufficient to demonstrate that the documents should be admitted into evidence. Business records are admissible as an exception to the hearsay rule because they are considered reliable since businesses have an

incentive to keep accurate records. *See, e.g.*, *Bank of New York*, 157 So. 3d at 1070; *Timberlake Constr. Co.*, 71 F.3d at 341; *see also* Ehrhardt, *Florida Evidence* § 803.6, at 1097 ("The evidence is reliable because it is of a type that is relied upon by a business in the conduct of its daily affairs and the records are customarily checked for correctness during the course of the business activities."); 2 *McCormick on Evidence* § 286 (7th ed. 2013) ("Reliability is furnished by the fact that regularly kept records typically have a high degree of accuracy. The regularity and continuity of the records are calculated to train the recordkeeper in habits of precision; if of a financial nature, the records are periodically checked by balance-striking and audits; and in actual experience, the entire business of the nation and many other activities function in reliance upon records of this kind."). But documents should only be admitted as reliable business records if the proponent's witness provides testimony actually demonstrating personal knowledge and establishing that these are the type of documents that fall into the category of reliable business records.

Moreover, I strongly disagree with the majority's contention that, because the foundational witness' testimony is "relevant only to the collateral issue of essentially authenticating relevant documents, there is no reason to prolong a trial and clutter a record with irrelevant details of those practices and procedures." Majority op. at 15. This contention (as well as the majority's out-of-place policy

- 35 -

discussion regarding authentication and lender records) demonstrates that the majority, notwithstanding its protest to the contrary, is making the mistake of conflating the evidentiary concepts of authentication and admissibility. And this fundamental legal error is at the root of the majority's erroneous decision in this case.

Section 90.901, Florida Statutes (2014), of the Florida Evidence Code provides the following regarding authentication:

> Authentication or identification of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims.

However, as Professor Ehrhardt explains, "[i]f an item of evidence has been authenticated, it is not automatically admissible." Ehrhardt, *Florida Evidence* § 901.1, at 1288. "When a document is authenticated, there has only been evidence introduced, or an agreement by counsel, that the document or writing is what it purports to be." *Id.* at 1288-89. But "[t]he hearsay rule, or other exclusionary rule may still exclude the evidence." *Id.* at 1289. Professor Ehrhardt continues, "In other words, after document is authenticated, a witness must lay the foundation for the admission of a document under a hearsay exception; for example, the business record or public record exception." *Id.*; *see also United States v. Browne*, 834 F.3d 403, 415 (3d Cir. 2016) ("Evidence that is properly authenticated may nonetheless be inadmissible hearsay if it contains out-of-court

statements, written or oral, that are offered for the truth of the matter asserted and do not fall under any exception enumerated under Federal Rule of Evidence 802."); 2 *McCormick on Evidence* § 227, at 102-03 ("Again, it must be emphasized that authentication does not secure admissibility of electronic documents into evidence. As with more traditional forms of written evidence, if the electronic or computer-generated writing is used to prove the truth of its contents, the hearsay rule must be satisfied."). Professor Ehrhardt also explains that, "[a]lthough the term authenticate is sometimes used to refer to whether a proper foundation has been laid for a document, this usage is imprecise and can be misleading." Ehrhardt, *Florida Evidence* § 901.1, at 1289; *see also Arce v. Wackenhut Corp.*, 40 So. 3d 813, 816 (Fla. 3d DCA 2010) ("It appears that Arce believes either that a federal authentication of the [hearsay] document will *ipso facto* make the document admissible, or that Arce may be able to persuade the FBI to include something additional in the certification that will make the document admissible into evidence. Arce again errs, first by making the common legal error of conflating authenticity of a document with admissibility . . . ."); *Friedle v. Bank of New York Mellon*, 226 So. 3d 976, 978 (Fla. 4th DCA 2017) (explaining that "[w]hile it was certified by the Securities and Exchange Commission ("SEC") as being filed with that agency, and thus was self-authenticating, there is a difference between authentication and admissibility" and holding that "[t]he Bank did not present

sufficient evidence through its witness to admit this unsigned document as its business record").

Accordingly, while the majority's conflating of authentication and admissibility is a common mistake, it has misled the majority into reducing the requirements for laying a proper foundation for the admission of documents under the business records exception into a mere formality, which is contrary to the Florida Evidence Code. Simply stated, the majority is increasing the likelihood that inadmissible documents will be admitted into evidence simply because they were authenticated.

The majority counters that a litigant would still be "free to contest the genuineness of the documents . . . irrespective of the quantum of detail we require as part of the threshold showing," majority op. at 18, but this flips the burden of laying the foundation for admission of records from the records proponent to the party against whom they are to be admitted. Such a flip in the burden of proof is contrary to the Florida Evidence Code. *See* § 90.803(6)(a), Fla. Stat.*; Yisrael*, 993 So. 2d at 956 ("[T]he evidentiary proponent . . . ha[s] the burden of supplying a proper predicate to admit this evidence under an exception to the rule against hearsay."). Of course, the majority's willingness to take away the records proponent's burden to lay a proper foundation for admission most likely arises from the majority's legal error of confusing admissibility with authentication.

*Compare* Ehrhardt, *Florida Evidence* § 901.1, at 1287-88 ("Evidence is authenticated when prima facie evidence is introduced to prove that the proffered evidence is what its proponent claims. The finding of authenticity does not mean that the trial judge makes a finding that the proffered evidence is genuine. The judge only determines whether prima facie evidence of its genuineness exists. Once the matter has been admitted the opposing party may challenge its genuineness. The jury then determines as a matter of fact whether the evidence is genuine.") (footnotes omitted) *with* Ehrhardt, *Florida Evidence* § 803.6, at 1103-04 ("While the trial judge has the duty under section 90.105(1) to make a factual determination that the proponent of the document has demonstrated the necessary foundation for the admission of a business record, the opponent has the burden of showing sufficient lack of trustworthiness. The record is inadmissible if the trial court makes the section 90.105(1) determination that the opponent has shown that the record is not trustworthy. Even if the court rules that the record is admissible under section 90.803(6), opposing counsel can offer the same evidence of lack of trustworthiness to the weight and credibility that should be given the record.") (footnote omitted). In other words, the majority conflates the question of whether a document is genuine with the question of whether a document is an admissible business record, which leads it to confuse the burdens of proof specific to each question.

Finally, I disagree with the majority's characterization of requiring the records proponents to satisfy the foundational requirements for the admission of business records as requiring "irrelevant details" of a business' "practices and procedures." To belabor the point, these details that "clutter the record" are needed to demonstrate that records at issue are in fact business records that should be admitted into evidence. Like the majority, I have no doubt that most commercial lenders can produce witnesses who can lay the proper foundation for the admission of their records under the business records exception. But the particular lender in this particular case did not, and this Court should not change the rules that help ensure the reliability of evidence that is admitted as an exception to the general bar against hearsay simply because the details may seem tedious to some and most lenders can meet the requirements anyway. Mistakes with records that are used to establish large judgments happen. We should not eliminate foundational requirements that safeguard the reliability and accuracy of evidence.

## III. CONCLUSION

To lay the proper foundation for the admission of records under the business records exception to the hearsay rule, the records proponent's witness must do more than merely echo the statutory elements of the exception and identify employment and familiarity with a different company. The witness must demonstrate that he personally has the sufficient knowledge to affirm the statutory

- 40 -

elements of the business records exception by demonstrating personal knowledge of the methods utilized by the business regarding the records at issue, such as how the records were created, what they were used for, and how they were maintained. Otherwise, the business records exception to the hearsay rule becomes a magic-words test rather than a requirement that the records proponent demonstrate the reliability of the business records.

At worst, with general application, the majority's opinion seriously undermines the propriety of the business records exception to hearsay. At best, it creates a special rule for foreclosure actions.[8] Accordingly, I would quash the

_____

8. *Cf.* Ehrhardt, *Florida Evidence* § 803.6, at 1113-14 ("Some District Courts of Appeal have expanded the records admissible under 90.803(6) in mortgage foreclosure cases. In many cases, there are multiple companies involved in servicing an individual loan as a result of a loan portfolio being sold or acquired by another entity. In order to establish the loan payment history, an employee of the current servicer frequently has no knowledge of the record-keeping system or process used by prior servicers and therefore cannot lay the foundation under 90.803(6) for the records maintained by the prior servicer. These decisions have determined that the testimony of an employee of a current servicer can lay the foundation for the records of a former servicer if the testimony establishes that the current servicer independently verified the accuracy of the former servicer's records regarding the payment history and details the procedure used to verify the accuracy of the payment histories. Presumably, this verification goes beyond confirming that the amount due on the former servicer's records is the same as the amount entered in the current servicer's records. While the decisions seem to focus on records in the mortgage servicing industry, which are plagued by inaccuracies, its rationale extends to all records offered under 90.803(6) which are records of a prior business and are presently located in the records of the current business. While records acquired from another business and incorporated into the record of the acquiring business can fairly be treated as being made by the acquiring business, the acquired records should be admissible only if the other

Second District's decision in *Jackson v. Household Finance Corp. III*, 236 So. 3d 1170 (Fla. 2d DCA 2018), and approve the Fourth District's decision in *Maslak v. Wells Fargo Bank, N.A.*, 190 So. 3d 656 (Fla. 4th DCA 2016). I respectfully dissent.

LABARGA, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

      Second District - Case No. 2D15-2038

      (Manatee County)

Nicole M. Ziegler of Emerson Straw, PL, St. Petersburg, Florida,

      for Petitioner

Matthew A. Ciccio and Spencer Gollahon of Aldridge Pite, LLP, Delray Beach, Florida,

      for Respondent

Robert R. Edwards of Choice Legal Group, P.A., Fort Lauderdale, Florida; David Rosenberg of Robertson, Anschutz & Schneid, P.L., Boca Raton, Florida; Marissa M. Yaker of Padgett Law Group, Tallahassee, Florida; and Andrea R. Tromberg of Tromberg Law Group, P.A., Boca Raton, Florida,

      for Amicus Curiae American Legal and Financial Network

---

requirements of section 90.803(6) are satisfied. The decisions are a significant change in Florida law and inconsistent with many other Florida decisions.") (footnotes omitted).